[No. 62849-1.   En Banc.   December 21, 1995.]

SCOTT T. GOODMAN, *as Administrator, Petitioner*, v. GLADYS K. GOODMAN, *Respondent*.

*Jerry L. Kagele* and *Kagele Law Office*, for petitioner.
*McCormick, Dunn & Black*, by *Robert A. Dunn* and *Keller W. Allen*, for respondent.

JOHNSON, J. — This case involves a family dispute between Clive Goodman's mother, Gladys Goodman, and his children over property he transferred to Gladys before his death in 1983. A jury found Gladys held Clive's property in trust for his children and wrongfully withheld the property. The trial judge granted judgment notwithstanding the verdict (JNOV),[1] having found the children commenced the action after the limitations period had run. At issue is whether the trial court erred by granting JNOV because Gladys did not propose jury instructions on the statute of limitations defense, and whether there were disputed facts regarding the limitations period such that it could not be decided as a matter of law. Because in this case the issue of when the statute of limitations began to run was susceptible to more than one reasonable interpretation, it presented a question of fact that could not be decided on a motion for a JNOV. We reverse.

Clive Goodman died in November 1983 after a three-year struggle with a liver disease. His illness required frequent hospitalizations and complicated medical procedures. About five years before his death, Clive gave Gladys general power of attorney. About one year before his death, he transferred his major asset, Ozzie's East Tavern,

---

[1]Under CR 50, as amended, a JNOV is now a judgment as a matter of law.

to Gladys. Gladys sold the tavern on an installment contract in 1982 for $70,000; she deposited the proceeds of the sale in her bank account.

Clive was survived by four children: Scott, Craig, Michelle, and his stepdaughter Tamara. When Clive died in 1983, Scott was 17, Craig was 16, Michelle was 13, and Tamara was 21. He was also survived by Shirley Golden, his first wife and mother of all the children. Shirley and Clive had divorced in 1972, but remained close friends until his death.

Some eight years after Clive's death, when Scott was 25 years old, he asked Gladys for the first time for money from the sale of Ozzie's East and Clive's other assets. When Scott asked Gladys for the money, she reportedly told him she had taken care of Clive and felt she deserved it.

Scott then hired an attorney and was appointed personal representative of Clive's estate. He sued Gladys in that capacity in 1991, alleging that Clive intended Gladys to hold Clive's property for the benefit of his children until they were the age of majority or were able to receive and manage the property on their own. Gladys pleaded laches as an affirmative defense and counterclaimed for offset of money she had loaned to Clive or had paid on his behalf.

At trial, Shirley testified Clive had a will, had transferred all of his property to Gladys, and intended his children to have his property when they were old enough to responsibly manage it. She testified that shortly after the funeral, Gladys told her there was no will but she would give the children Clive's money when they were old enough to be responsible. Shirley relayed this information to the children. The children did not have a problem with Gladys holding Clive's property in trust. Shirley thought about hiring an attorney at this time but could not afford one. She stated:

> I wasn't concerned at all about the moneys. I felt very confident that there wouldn't be a problem with it. She [Gladys] told me the same things Dee [Clive] had told me.

Report of Proceedings, vol. I at 68. Shirley first became concerned when Scott asked Gladys about the property in 1991.

Clive's stepdaughter Tamara testified she had seen Clive's will in 1977 and briefly discussed it with him. Based on that conversation, she believed Clive's property would be divided among the children. About one year after Clive's death, Tamara heard from relatives that all of Clive's property was in Gladys' name, and the children were not entitled to anything. She believed she discussed this with her siblings and Shirley around Christmas 1983. Shirley does not recall discussing this with Tamara.

Gladys testified she never had a conversation with Shirley regarding Clive's property or a will. She also testified Clive gave her the money to repay numerous loans and out of love and appreciation.

At the close of Scott's case, Gladys moved for a directed verdict on the grounds the limitations period had run. The trial court reserved ruling on this motion.

At the close of testimony, the trial court instructed the jury to decide whether Clive transferred his property to Gladys as a gift or to hold in trust for the benefit of the children. It defined a trust as:

> A trust can be defined as a right of property, real or personal, held by one party for the benefit of another. It is a confidence placed in one person, who is termed a trustee, for the benefit of another, respecting property which is held by the trustee for the benefit of another. A trust need not be in writing. A trust can arise or be implied from circumstances as a result of the presumed intention of the parties as gathered from the nature of the transaction between them.

Clerk's Papers at 28. Gladys did not offer a jury instruction on the statute of limitations defense, nor did she except to the trial court's failure to give one.

The jury found Gladys held the property in trust for the benefit of Clive's children, and the children incurred damages of $60,000 as a result of Gladys' wrongful retention

of the trust property. They also found Gladys was entitled to an offset of $11,000.

Following the verdict, the trial court granted Gladys' motion for a JNOV, finding that the children should have discovered the cause of action more than three years before Scott commenced the action. The Court of Appeals agreed. It found the statute of limitations issue presented a factual question, but affirmed the trial court because the facts were susceptible of only one reasonable interpretation: the children were put on notice of facts, which with the exercise of due diligence would have led to discovery of the wrongdoing as each of them turned 18 and received nothing. Because the youngest child turned 18 more than three years before the commencement of the action, the suit was time barred. *Goodman v. Goodman*, No. 13005-3-III, slip op. at 7 (Mar. 28, 1995).

In reviewing a JNOV, this court applies the same standard as the trial court. *Peterson v. Littlejohn*, 56 Wn. App. 1, 8, 781 P.2d 1329 (1989). A JNOV is proper only when the court can find, "as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict." *Brashear v. Puget Sound Power & Light Co.*, 100 Wn.2d 204, 208-09, 667 P.2d 78 (1983) (quoting *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980)). A motion for a JNOV admits the truth of the opponent's evidence and all inferences that can be reasonably drawn therefrom, and requires the evidence be interpreted most strongly against the moving party and in the light most favorable to the opponent. No element of discretion is involved. *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 254-55, 386 P.2d 958 (1963). Viewing the evidence in the light most favorable to the nonmoving party, we hold the statute of limitations defense presented a question of fact that could not be decided as a matter of law.

The parties and the courts below have referred to the trust as a constructive trust. A constructive trust is an equitable remedy imposed by courts when someone should not in fairness be allowed to retain property. *Farrell v.*

*Mentzer*, 102 Wash. 629, 174 P. 482 (1918); *see generally* George T. Bogert, *Trusts* § 77 (6th ed. 1987). An express trust, on the other hand, arises because of expressed intent and involves a fiduciary relationship in which the trustee holds property for the benefit of a third party. *In re Lutz*, 74 Wn. App. 356, 365, 873 P.2d 566 (1994).

Scott's theory in this case, consistent with the jury instructions, was that Clive intended Gladys to hold his personal property in trust until the children reached majority or were mature enough to handle it. In support of this theory, Shirley testified:

A. The only thing[ ] that was said, was the day of the funeral. . . . [Gladys] said that she was not giving them [the children] any money until they got older. Because she didn't want them blowing it.

Q. Did you relay that to the children?

A. Yes.

Q. Did she indicate how much older they would have to get?

A. Until they were responsible. See, we have had a few problems with Scott. And — just took him a little longer than it does other people to grow up.

Report of Proceedings, vol. I at 19-20.

Q. Well, did you ever explain to them what you perceived to be Mrs. Goodman's role in holding onto the property?

A. Well, they just knew that their grandmother was going to — give them the money after they reached a certain age. I didn't know what the certain age was. One child could be — responsible at this age. Another one won't. So I didn't know what she was waiting for. Or — I never questioned it because Dee had told me that they were going to be taken care of, they weren't going to get their money until they were — older.

Report of Proceedings, vol. I at 24.

Consistent with this and other testimony, the jury found Clive intended Gladys to hold his property in trust for the

children. This being the case, the trust at issue is properly characterized as an express trust.

An action based on an express (or constructive trust) is subject to the three-year statute of limitations contained in RCW 4.16.080. *Viewcrest Coop. Ass'n v. Deer*, 70 Wn.2d 290, 294-95, 422 P.2d 832 (1967); *Arneman v. Arneman*, 43 Wn.2d 787, 800, 264 P.2d 256, 45 A.L.R.2d 370 (1953). The statute of limitations on an express trust action begins to run when the beneficiary of the trust discovers or should have discovered the trust has been terminated or repudiated by the trustee.[2] *Rogich v. Dressel*, 45 Wn.2d 829, 841, 278 P.2d 367 (1954). A repudiation occurs when the trustee by words or other conduct denies there is a trust and claims the trust property as his or her own. The repudiation must be plain, strong, and unequivocal. *O'Steen v. Estate of Wineberg*, 30 Wn. App. 923, 932, 640 P.2d 28, *review denied*, 97 Wn.2d 1016 (1982). Whether the statute of limitations bars a suit is a legal question, but the jury must decide the underlying factual questions unless the facts are susceptible of but one reasonable interpretation. *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 263, 840 P.2d 860 (1992); *Richardson v. Denend*, 59 Wn. App. 92, 95, 795 P.2d 1192 (1990), *review denied*, 116 Wn.2d 1005 (1991).

Thus, the trial court could grant only a JNOV on this issue as a matter of law if no triable issue of fact existed as to when Gladys repudiated or terminated the trust. *See Haslund v. City of Seattle*, 86 Wn.2d 607, 621, 547 P.2d 1221 (1976). The jury found Gladys held Clive's property in trust for the children. Although no findings were made concerning the terms of the trust, the trial testimony supports Scott's view that Clive intended Gladys to hold the property until the children reached majority or were mature enough to handle it. Had the evidence been that Clive intended only Gladys to hold his property until the

---

[2]The statute of limitations begins to run on a constructive trust when the beneficiary discovers or should have discovered the wrongful act which gave rise to the constructive trust. *Arneman*, 43 Wn.2d at 800.

children reached majority, the repudiation would have occurred when each child turned 18 and received nothing as the trial court found. But given the jury's verdict and the evidence that Clive intended the children to have his property when they were mature enough to handle it, it can hardly be said as a matter of law that the repudiation occurred when each child turned 18. A reasonable interpretation of the evidence is the repudiation occurred in 1991 when Gladys told Scott for the first time she deserved Clive's money and would not give him anything. Under these circumstances, when Gladys repudiated the trust is susceptible to more than one reasonable interpretation, and the trial court erred.

Having decided the trial court erred by granting JNOV, it is unnecessary to resolve the second issue—whether a trial court may grant a JNOV on the grounds the action is barred by the statute of limitations when the jury is not instructed on the statute of limitations, but the moving party earlier asks for a directed verdict on this issue. We note, however, that the "take out" rule in *Browne v. Cassidy*, 46 Wn. App. 267, 728 P.2d 1388 (1986) is not implicated because Gladys moved for a directed verdict on the limitations issue.

Both parties requested attorney's fees in their briefs to the Court of Appeals under RAP 18.1 and RCW 11.96.140. We will not review the Court of Appeals decision denying attorney's fees because Scott's petition for review does not identify attorney's fees as an issue for review. RAP 13.4; RAP 13.7(b).

DURHAM, C.J., DOLLIVER, SMITH, MADSEN, ALEXANDER, and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.