949 P.2d 449 (1998)
89 Wash.App. 503
Edward H. PIETZ, Appellant,
v.
Charles INDERMUEHLE and Ruth Indermuehle, Lamont Smith and Jane Doe Smith, Michael J. Wynne and Mary Wynne, Defendants,
Leslie E. Fordham and Virginia Fordham, Respondents.
No. 20497-5-II.
Court of Appeals of Washington, Division 2.
January 16, 1998.
As Amended on Clarification February 27, 1998.
*451 James D. Hamilton, Vancouver, for Appellant.
Rodney E. Lewis, James S. Smith, Darleen Darnall, Davis Wright Tremaine, Portland, for Respondents.
*450 SEINFELD, Judge.
The trial court summarily dismissed Edward Pietz's action against his former partners for indemnification, contribution, and breach of fiduciary duties. Pietz appeals, contending that the trial court erred in ruling that these claims were time barred. We hold that Pietz's partnership indemnity/contribution claim did not accrue until he paid the settlement and was, therefore, timely. We also find that there is a genuine issue of material fact regarding whether Pietz's contribution claim under the Tort Reform Act was timely. Accordingly, we reverse the trial court's dismissal of these claims and remand for trial. We affirm the dismissal of the remaining claims.

FACTS & PROCEDURAL HISTORY
In the spring of 1986, five investors, Edward H. Pietz, Michael Wynne, Leslie "Roy" Fordham, Charles Indermuehle, and Lamont Smith (the Vancouver Group), began discussions with Robert Berry regarding the joint purchase of the Sundance Hotel and Casino in Las Vegas, Nevada.[1] The Vancouver Group intended to form a business entity, which, in turn, would become a partner with Berry and his associates in the purchase of the hotel. Berry and this yet-to-be-formed entity would split the purchase price; Berry would be responsible for the gaming aspect of the operation, while the Vancouver Group would oversee the hotel operation and food and beverage services.
*452 In April 1986, the Vancouver Group and Berry made an offer to purchase the hotel. The Vancouver Group, among other things, agreed to supply one half of the $3,000,000 necessary to close the transaction. Pietz agreed to supply $500,000 personally.[2] The seller accepted the offer subject to several contingencies, including the posting of a $285,000 letter of credit and approval of the purchase by the Nevada State Gaming Control Board (the Control Board). On May 13, Pietz signed an application to the Nevada State Gaming Commission for a nonrestricted gaming license.
Toward the end of May the deal began to unravel. After receiving information that caused him to lose confidence in Berry, Pietz decided to withdraw from the enterprise. He claimed that he announced his decision to the members of the Vancouver Group on May 20, 1986. With this announcement, Pietz also refused to provide the funds for the $285,000 letter of credit, contrary to a previous agreement.
Undaunted, Fordham, without disclosing Pietz's withdrawal, paid for the letter of credit with his own funds and continued negotiating with Berry on behalf of the Vancouver Group. Neither Pietz nor any of the remaining members of the Vancouver Group told Berry that Pietz had withdrawn or that Fordham, rather than Pietz, had paid for the letter of credit.
On May 28, 1986, eight days after his alleged withdrawal from the enterprise, Pietz met with a Control Board agent regarding the gaming license application. He told the agent about his reservations as to Berry's ability to manage the casino and that the parties were still negotiating the purchase price. Pietz specifically asked the agent not to inform Berry of these concerns.
On June 2, Berry, who still believed that Pietz was a member of the Vancouver Group, signed a binding agreement committing himself and the Vancouver Group to buy the hotel. One week later, Pietz called Berry and told him that he had withdrawn from the enterprise. Berry and the remaining members of the Vancouver Group were unable to replace Pietz. The hotel was later sold to another party.
In June 1988, Berry filed a complaint in federal court in Nevada against Pietz and his wife; Pietz's corporation, E.P. Enterprises, Inc.; and Michael Wynne, the vice-president and legal counsel for E.P. Enterprises. The complaint alleged breach of contract, fraud, tortious breach of the covenant of good faith and fair dealing, and negligent misrepresentation.
Four days before the September 9, 1991 scheduled trial date, Berry and Pietz tentatively agreed upon a settlement, whereby Pietz agreed to pay $950,000 to Berry and cancel a $200,000 promissory note Berry owed to him. Pietz signed the settlement agreement on September 23, 1991. He wrote the settlement check on October 8, 1991.
On September 18, 1992, Pietz sued the members of the Vancouver Group. In his first cause of action, he claimed that the Vancouver Group was a partnership or joint venture and that he had incurred the liability underlying the settlement while acting on behalf of the partnership. Thus, he claimed that the partnership was obliged to indemnify him or contribute toward the cost of the settlement. His second and fourth causes of action alleged that the members of the Vancouver Group had breached their respective duties as fiduciaries and agents. The remaining cause of action sought contribution or indemnification based on tort liability.
All of the defendants subsequently settled, except Fordham. Fordham moved for summary judgment, which the trial court granted, dismissing all of Pietz's claims.

ANALYSIS

I

Liability of Partnership for Contribution or Indemnity
Pietz first contends that the settlement he paid to Berry constituted a partnership *453 liability. RCW 25.04.060(1) defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit."[3] The purpose of a joint venture is similar to a partnership but it is limited to a particular transaction or project. Consequently, partnership law generally applies to joint ventures as well. Paulson v. McMillan, 8 Wash.2d 295, 298, 111 P.2d 983 (1941).
The Vancouver Group, as originally organized, is best characterized as a joint venture, given that the investors associated for the purpose of purchasing and managing, and presumably sharing in the profits of the hotel. This joint venture dissolved when Pietz unilaterally withdrew. RCW 25.04.290; see Ashley v. Lance, 75 Wash.2d 471, 474 n. 3, 451 P.2d 916 (1969) ("[a]ny partner can, by unilateral action, dissolve a partnership by withdrawing from it").

A. Accrual
Pietz asserts that the liability underlying his settlement with Berry arose from Fordham's failure to inform Berry about Pietz's withdrawal from the joint venture. Both parties agree that the applicable statutory period is three years. RCW 4.16.080(3) (statute of limitations for actions arising from verbal contract or liability). Pietz, however, contends that his cause of action accrued when he settled Berry's claim in the fall of 1991. Fordham argues that the cause of action accrued when Berry sued Pietz in June 1988.[4]
Whether a claim is time barred is a legal question, which this court review de novo. Goodman v. Goodman, 128 Wash.2d 366, 373, 907 P.2d 290 (1995). A statutory period begins to run when the plaintiff's cause of action accrues. Malnar v. Carlson, 128 Wash.2d 521, 529, 910 P.2d 455 (1996); RCW 4.16.005. A cause of action accrues when the plaintiff has a right to seek relief. Malnar, 128 Wash.2d at 529, 910 P.2d 455. An indemnity or contribution cause of action accrues when the payment is made. Central Wash. Refrigeration, Inc. v. Barbee, 133 Wash.2d 509, 516-18, 946 P.2d 760, 764-65 (1997); Caldwell v. Hurley, 41 Wash. 296, 300, 83 P. 318 (1906).
At the earliest, Pietz's contribution or indemnity claim accrued in the fall of 1991, when he paid the settlement. He commenced his suit against Fordham in September 1992, well within the three-year statute of limitations. The trial court erred when it dismissed this claim as untimely.

B. Alternative Grounds
Fordham also argues that had the trial court reached the merits, it would have dismissed the case. Because an appellate *454 court may affirm the lower court's ruling "upon any theory established by the pleadings and supported by the proof, even if the trial court did not consider it," we consider this contention. LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027 (1989).
When reviewing an order for summary judgment, this court conducts the same inquiry as the trial court. Sherman v. State, 128 Wash.2d 164, 183, 905 P.2d 355 (1995). We will affirm a summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Sherman, 128 Wash.2d at 183, 905 P.2d 355. We consider all facts and reasonable inferences in the light most favorable to the nonmoving party; we review all questions of law de novo. Sherman, 128 Wash.2d at 183, 905 P.2d 355.
Fordham first contends that, assuming a partnership existed, it was Pietz's "unilateral withdrawal" from the partnership that subjected him to liability. As Pietz's withdrawal effectively dissolved the partnership, Fordham further contends that the withdrawal was not in the usual course of partnership business and, therefore, prevents liability from attaching to the remaining partners.
To determine whether Pietz can maintain a contribution or indemnification action against Fordham, we must first establish whether the settlement between Pietz and Berry extinguished partnership liability. If so, we must then evaluate the extent to which Fordham, as Pietz's former copartner, is responsible for indemnifying Pietz or contributing toward the cost of settlement.
Agency law controls partnership relationships. RCW 25.04.090. Every partner is an agent of the partnership for the purpose of its business. RCW 25.04.090; Barnes v. McLendon, 128 Wash.2d 563, 573, 910 P.2d 469 (1996). All partners are jointly and severally liable for any "wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his [or her] copartners." RCW 25.04.130, .150(1).
The agency relationship between partners, however, dissolves upon dissolution of the partnership, provided proper notice is given. RCW 25.04.350; Harris v. Zier, 43 Wash. 573, 576, 86 P. 928 (1906). If proper notice is not given, the former partners may remain liable to persons who have no knowledge of the dissolution and continue to deal with the firm as a partnership or rely on its existence as a partnership. RCW 25.04.350(1)(b)(ii);[5]Egholm v. Williams, 81 Wash. 609, 611, 143 P. 152 (1914). In other words, Pietz, the withdrawing partner, could be held responsible for partnership liability to a third party incurred after dissolution if the third party, who dealt with the partnership before dissolution, continued to deal with former members of the partnership without notice or knowledge of the dissolution.
When Pietz withdrew on May 20, 1986, the partnership dissolved. But none of the remaining members of the Vancouver Group informed Berry of Pietz's withdrawal. Berry testified that, had he known of Pietz's withdrawal, he would not have entered into the June 2 agreement and, therefore, would not have suffered any damages. Berry, as a third party, who continued to deal with the remaining members of the Vancouver Group after dissolution without notice or knowledge of Pietz's withdrawal, could recover from Pietz those damages that were related to his postdissolution dealings with the remaining partners. When Pietz settled the claim, he extinguished the partnership liability.
Because there is evidence that Pietz paid a partnership liability, the remaining question is whether Pietz can seek indemnification or contribution from the remaining copartners. When a partner in a *455 dissolved partnership enters a transaction with a third party who lacks knowledge of the dissolution, all of the partners are liable to their copartners for their share of any resulting liability. See RCW 25.04.340(1). If the transacting partner had knowledge of the dissolution and the transaction is unrelated to winding-up of partnership affairs, the transacting party is not privileged to act on behalf of the partnership and a "right of contribution exists against him and in favor of the innocent partners." Judson A. Crane & Alan R. Bromberg, PARTNERSHIP § 82, 467-68 (1968).
Again, viewing the evidence in the light most favorable to Pietz, Fordham knowingly continued pursuing partnership business with Berry after May 20 without disclosing that the original partnership had dissolved because of Pietz's withdrawal. In deposition testimony, Pietz declared that he told Fordham, along with the other members of the Vancouver Group, that he was withdrawing on May 20. That Fordham paid the letter of credit the day afterward, using his own funds, provides additional evidence supporting Pietz's claim.
We also find that Fordham and Wynne, without disclosing Pietz's withdrawal, continued to pursue partnership business with Berry after the dissolution. As Berry stated in deposition testimony,
[Question:] [W]as your authority to bind the corporation provided by Michael Wynne?
[Answer:] ... Mike Wynne and Roy Fordham was an integral part of this process, too, both of them. But the final go ahead to sign the document after all the financial matters had been resolved with Mr. Fordham was given to me by Mr. Wynne on the morning of June second.
In sum, there is evidence that Fordham and Wynne had knowledge of the dissolution, but kept this information from Berry. Because of his lack of knowledge, Berry proceeded to commit himself to the purchase of the hotel. This evidence creates genuine issues of material fact as to whether Pietz is entitled to indemnification or contribution from Fordham. Thus, Fordham was not entitled to summary judgment of dismissal.
Finally, Fordham contends that a negligent partner "does not have a right to contribution or indemnification from his copartners who are constructively negligent in relation to injuries he caused to a third party." 59A Am.Jur.2d Partnership § 595 (1987). Based on the record before us, we find that there is a genuine issue of material fact regarding whether Fordham was actively or constructively negligent.

II

Breach of Fiduciary Duty
Pietz next contends that Fordham, as a partner, breached his fiduciary duty of good faith, fairness, and loyalty by failing to inform Berry that Pietz had withdrawn from the partnership. Pietz contends that the fiduciary claim, like the partnership indemnity claim, accrued when he paid the settlement to Berry. Fordham argues that breach of fiduciary duty is a tort claim and, therefore, the cause of action accrued at the time Pietz discovered the factual basis for his claim.
The relationship between a principal and agent is contractual. The breach of a fiduciary duty, however, imposes liability in tort. Miller v. U.S. Bank, 72 Wash.App. 416, 426, 865 P.2d 536 (1994). Actions upon unwritten contracts or liability arising from unwritten contracts or instruments are subject to a three-year statute of limitation. RCW 4.16.080(3).
Here, Pietz, at the latest, learned of the factual basis underlying this claim against Fordham when Berry sued him in 1988. Accordingly, the statute of limitations, at the latest, expired in 1991. Pietz filed this action in 1992. The trial court properly dismissed this claim as untimely.

III

Liability of Fordham for Berry's Tort Damages
Pietz next argues that the trial court improperly dismissed his claim seeking contribution for the portion of the settlement attributable to Berry's claim of tortious violation of the duty to conduct good faith *456 and fair negotiations under Nevada law. In his complaint, Pietz alleged that the defendants were jointly and severally liable and that the damages attributable to this tort should be apportioned according to each parties' comparative fault.
The trial court dismissed this claim after determining that Pietz had not complied with provisions in the Tort Reform Act, RCW 4.22, governing the right to contribution. RCW 4.22.070(1)(b) provides that the liability of each defendant is several only except:
If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the [claimant's] total damages.
(Emphasis added.) The trial court concluded that Fordham was not jointly and severally liable because he was not a "defendant[] against whom judgment [was] entered."
Both parties, however, acknowledge that the preceding subsection, RCW 4.22.070(1)(a), contains the applicable law:
A party shall be responsible for the fault of another person or for payment of the proportionate share of another party where both were acting in concert or when a person was acting as an agent or servant of the party.
The trial court erred when it ruled that RCW 4.22.070(1)(b) barred this cause of action.
Fordham, however, maintains that Pietz cannot satisfy the requirements of RCW 4.22.070(1)(a). He argues, among other things, that his agency relationship with Pietz terminated when Pietz withdrew from partnership.
Unless the principal and agent agree otherwise, the principal's termination of an agent's authority imposes a duty on the agent not to take actions as though he possessed such authority, provided the agent has notice or knowledge of the termination. RESTATEMENT (SECOND) OF AGENCY § 386 (1958). The Uniform Partnership Act incorporates similar principles. See RCW 25.04.340, .350. Cf. Egholm v. Williams, 81 Wash. 609, 611, 143 P. 152 (1914) (former partner held liable for debts incurred after dissolution of partnership when third party continued to deal with former partner's copartner without notice or knowledge of dissolution). The evidence here that Fordham continued to negotiate with Berry after Pietz's withdrawal from the partnership, without disclosing Pietz's withdrawal, is sufficient to raise an issue of material fact as to the continuation of the agency relationship. Thus, the evidence is sufficient to allow Pietz to proceed on his contribution claim under RCW 4.22.070(1)(b). Pietz satisfied the requirements for seeking contribution under RCW 4.22.070(1)(b).
Fordham also contends that Pietz's settlement with Berry did not satisfy RCW 4.22.040(2), which provides:
Contribution is available to a person who enters into a settlement with a claimant only (a) if the liability of the person against whom contribution is sought has been extinguished by the settlement and (b) to the extent that the amount paid in settlement was reasonable at the time of the settlement.
This subsection protects the tortfeasor against whom contribution is sought from exposure to double liability from the injured plaintiff and the settling tortfeasor seeking contribution. Baker v. Winger, 63 Wash. App. 819, 822, 822 P.2d 315 (1992).
Here, Pietz's settlement agreement with Berry states, in pertinent part:
Berry, on behalf of himself and his heirs, administrators, executors, personal representatives, successors, and assigns, hereby completely releases and forever discharges E.P. Enterprises and Pietz and their past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest and assigns and all other persons, firms and entities with whom any of the former have been or are now or may hereafter be affiliated of and from any and all past, present or future claims, demands, obligations, actions, causes of action, rights damages, costs, expenses and *457 compensation of any nature whatsoever, whether based on tort, contract or other theory of recovery which now exists or may hereafter accrue or otherwise be acquired, on account of, or in any way arising out of the acts, transaction and events which are the subject of the complaint (and all related pleadings) in the litigation, including without limitation any and all known or unknown claims and consequences flowing therefrom which have resulted or may result from the alleged acts or omissions of E.P. Enterprises and Pietz, their agents and employees.
Given the all-inclusive nature of this clause, we find that the settlement agreement between Berry and Pietz extinguished any common liability arising from dealings between Berry and the remaining members of the Vancouver Group.
The remaining question is whether the contribution action was timely. RCW 4.22.050 requires parties seeking contribution to commence their enforcement actions within one year of agreeing to discharge the common liability. This statute effectively creates a one-year statute of limitations. Whether the statute of limitations bars a suit is a legal question; underlying factual questions, however, must be resolved by a jury, unless the facts are susceptible to only one reasonable interpretation. Goodman v. Goodman, 128 Wash.2d 366, 373, 907 P.2d 290 (1995).
Pietz commenced his contribution action on September 18, 1992. Fordham contends that the contribution claim is time barred because the one-year statutory period began to run no later than September 5, 1991, when Berry and Pietz announced that they had reached a settlement agreement and canceled the trial. Pietz argues that the trial court correctly held that Berry and Pietz reached a final settlement agreement on November 23, 1991, when Pietz signed the agreement.
Principles of contract law control the formation of a settlement agreement. Morris v. Maks, 69 Wash.App. 865, 868, 850 P.2d 1357 (1993). If the parties' intention is clear and they have agreed upon the terms of a contract, then a contract exists, even though one or both of the parties may have contemplated formalizing it through the execution of a written document. Stottlemyre v. Reed, 35 Wash.App. 169, 171, 665 P.2d 1383 (1983).
Reasonable minds could disagree over when Berry and Pietz agreed to settle the lawsuit. Fordham offers deposition testimony in which Pietz declared that after September 5, 1991: "It was settled, there was no more discussion, no more, that's it." On the other hand, Pietz offers an affidavit in which one of his attorneys at the settlement conference swears that, although the parties reached "a tentative settlement in principle" during the conference, the settlement was contingent upon the parties structuring the settlement to satisfy Pietz's tax concerns. The attorney maintains that the parties continued to discuss and negotiate the terms of the settlement up until Pietz signed the agreement on November 23, 1991.
This conflicting evidence creates a genuine issue of material fact regarding when Pietz and Berry ultimately agreed to settle the lawsuit. As reasonable persons could disagree when the agreement came into being, the trial court erred when it concluded in its memorandum opinion that Berry and Pietz agreed to settle on September 23, when Pietz signed the agreement.

IV

Breach of Duty of Agent
Finally, Pietz argues that the trial court improperly dismissed his claim that Fordham, regardless and independent of the existence of the partnership, breached his duties as Pietz's agent by failing to disclose that Pietz had withdrawn from the enterprise. The trial court dismissed this claim, finding it untimely.
Both parties agree that a three-year statutory period applies. RCW 4.16.080(3). Pietz argues that the action accrued when he paid the settlement in 1991. Fordham, on the other hand, argues that the statutory period commenced when Pietz learned of the factual basis of his claim in 1986.
This claim was untimely for the same reasons that Pietz's claim for breach of fiduciary *458 duties was untimely. Pietz's alleged injury occurred when Fordham, acting as Pietz's agent, failed to disclose to Berry that Pietz had withdrawn. Viewing this evidence in the light most favorable to Pietz, we find that, exercising due diligence, Pietz should have been aware of the factual basis for his claim no later than 1988, when Berry filed his lawsuit. See Beard v. King County, 76 Wash.App. 863, 867, 889 P.2d 501 (1995) (a cause of action does not accrue until the injured party knows or in the exercise of due diligence should have known, the factual basis for a claim). Accordingly, the three-year statutory period expired, at the latest, in 1991. Pietz filed the instant claim in 1992. The trial court properly held that this cause of action was time barred.
In summary, we reverse the dismissal of Pietz's partnership contribution and tort contribution claims and remand these issues for further proceedings consistent with this opinion. We affirm the trial court's dismissal of Pietz's fiduciary duty and agency claims as untimely.
HOUGHTON, C.J., and HUNT, J., concur.
NOTES
[1] Pietz, Wynne, Fordham, Indermuehle, and Smith were all officers and/or board members of E.P. Enterprises, Inc., a corporation that owned and managed hotels.
[2] The individual investors in the Vancouver Group agreed to supply the following toward the purchase of the hotel: Pietz, $500,000; Fordham, $500,000; Indermuehle, $200,000; Smith, $200,000; and Wynne, $100,000. Berry and his associates were to provide the remaining $1,500,000.
[3] RCW 25.04.070 provides the following rules for determining whether a partnership exists:

In determining whether a partnership exists, these rules shall apply:
(1) Except as provided by RCW 25.04.160 persons who are not partners as to each other, are not partners as to third persons.
(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.
(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.
(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payments:
(a) As a debt by installments or otherwise,
(b) As wages of an employee or rent to a landlord,
(c) As an annuity to a surviving spouse or representative of a deceased partner,
(d) As interest on a loan, though the amount of payment vary with the profits of the business,
(e) As the consideration for the sale of a good will of a business or other property by installments or otherwise.
[4] After dissolution, a partner generally cannot bring a suit at law against a former copartner regarding partnership liabilities without first bringing an action to account for and settle the partnership's affairs. Pollock v. Ralston, 5 Wash.2d 36, 41, 104 P.2d 934 (1940). A cause of action for an accounting accrues at dissolution. Malnar v. Carlson, 128 Wash.2d 521, 529, 910 P.2d 455 (1996). Causes of action arising from unwritten partnership agreements are subject to a three-year statute of limitation. Malnar, 128 Wash.2d at 529, 910 P.2d 455. But because neither party has raised or briefed this issue, we decline to address it.
[5] RCW 25.04.350 provides in pertinent part:

(1) After dissolution a partner can bind the partnership ...:
....
(b) By any transaction which would bind the partnership if dissolution had not taken place, provided the other party to the transaction:
....
(ii) [H]ad ... known of the partnership prior to dissolution, and, having no knowledge or notice of dissolution, the fact of dissolution had not been advertised in a newspaper of general circulation in the place (or in each place if more than one) at which the partnership business was regularly carried on.