32 P.3d 307 (2001)
Kenneth G. BYRNE, Respondent,
v.
COURTESY FORD, INC., a Washington corporation, Appellant.
No. 25583-9-II.
Court of Appeals of Washington, Division 2.
October 12, 2001.
*308 James William Allen, Nece & Allen L.l.p., Poulsbo, James Ralph Dickens, Miller Nash Wiener Hager & Carlsen, Seattle, for Appellant.
Charles Kenneth Wiggins, Kenneth Wendell Masters, Wiggins Law Office, Bainbridge Is., Anne-Marie E. Sargent, Short Cressman & Burgess, Seattle, David Elliot Breskin, Short Cressman & Burgess, Seattle, for Respondent.
QUINN-BRINTNALL, J.
Courtesy Ford, Inc. fired Kenneth Byrne because he refused to give Courtesy Ford's owner a television set he won one night at an auto auction where he was purchasing cars for the company. Byrne sued Courtesy Ford in Kitsap County Superior Court for wrongful termination, breach of contract, violation of public policy, and retaliation.[1] The jury found no contract but found the television was "wages" and consequently, that the termination was retaliation for Byrne's refusing to return the "wages" television. The jury awarded Byrne $57,000 for economic damages and emotional distress. Courtesy Ford appeals the trial court's denial of its motions for a directed verdict and a judgment notwithstanding the verdict. Because we hold as a matter of law that this television set was not a "wage," we must reverse.

*309 FACTS
Kenneth Byrne managed Courtesy Ford's used car dealership, J.H. Buyrite, in Poulsbo from July to November 1993. His employment with Courtesy Ford was at-will. He was paid a salary and received commissions and bonuses from car and insurance sales under a written contract. The company had no written policy regarding auction prizes.
Byrne periodically attended auto auctions to purchase cars for the dealership. The parties dispute whether the company required this or if it was something Byrne pursued in order to exercise more control over the dealership's inventory. The auction houses only allowed those in the retail car business or their representatives to buy cars at their auctions. When Byrne attended the auctions, he purchased cars on Courtesy Ford's behalf, and the auction house billed the dealership for the cars afterward.
On November 18, 1993, Byrne attended the Puget Sound Auto Auction in Auburn, where he purchased about a dozen cars. Sometime before the auction ended, Byrne learned that the auction was holding a drawing for a television at the end of the evening. For each car purchased, a ticket with the buyer's name on it went into a basket, and at the end of the auction a winner was drawn from the names. The raffle rules required that the recipient be present to win. Normally the television sets raffled at the auction were small, but on this particular night the television was a full 31-inch set. Byrne remained at the auction, perhaps purchased another car while he waited, and ultimately heard his name called as the winner of the television. Byrne claimed the prize and took it home to his fiancée.
The next day while discussing the auction purchases with Rick Hern, Courtesy Ford's general manager, Byrne mentioned winning the television set the night before. Byrne's manager "gave him a bad time" about taking the set home instead of bringing it into the dealership; Byrne described the tone of this conversation as "banter." According to Byrne, Rick ultimately told him to keep the television. Rick agreed that they discussed the television the next day, but he contended that they did not come to an agreement about the ultimate disposition of the set.[2]
Six days later, Byrne passed Courtesy Ford owner John Hern, father of general manager Rick Hern, in the dealership office hallway. John asked Byrne, "[W]here is my TV?" Report of Proceedings at 80. Byrne responded, "Your general manager gave it away." Report of Proceedings at 80. Rick saw Byrne later that day and told him that John was serious and really wanted the television. Two days later, on November 26th, Rick called Byrne into his office and told him that he must bring in the television or be terminated. John Hern apparently walked by during this meeting and muttered, "Get rid of him." Report of Proceedings at 82. Rick Hern filled out a termination slip on the spot and fired Byrne.
Byrne sued Courtesy Ford in Kitsap County Superior Court for wrongful termination, alleging breach of contract, violation of public policy, and retaliation. At the close of plaintiff's case at trial, Courtesy Ford moved for judgment as a matter of law on all claims. The trial court granted the motion as to the public policy claim, but it denied the motion as to the contract and retaliation claims.
The jury was charged with the following instruction: "`Wages' are compensation due to an employee by reason of employment. Washington law prohibits an employer from retaliating against employees who assert wage claims, and also prohibits an employer from demanding a rebate of wages paid to the employee." Clerk's Papers at 237. Additionally, the court instructed the jury that "[i]t is ... illegal in Washington for an employer to collect or receive from any employee a rebate of any part of wages paid by such employer to such employee." Clerk's Papers at 238.
Using a special verdict form, the jury found no implied contract, but it did find that Byrne's termination "was in retaliation for *310 his lawful refusal to return wages to his employer." Clerk's Papers at 144. The jury awarded Byrne $21,000 in economic damages and $36,000 in mental anguish/emotional distress damages. The trial judge then awarded $41,164.25 in attorney fees and costs under RCW 49.48.030.[3]
Courtesy Ford filed a timely motion for judgment as a matter of law, arguing that there was no legal or evidentiary ground for the jury's finding that the television set was a wage under the Washington Minimum Wage Act. The trial court denied the motion. Courtesy Ford appeals.

ANALYSIS
In ruling on a motion for judgment as a matter of law, the trial court exercises no discretion. Goodman v. Goodman, 128 Wash.2d 366, 371, 907 P.2d 290 (1995); Douglas v. Freeman, 117 Wash.2d 242, 247, 814 P.2d 1160 (1991). The court must accept the truth of the nonmoving party's evidence and draw all favorable reasonable inferences. Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 98, 882 P.2d 703, 891 P.2d 718 (1994). The court must view the evidence in the light most favorable to the nonmoving party and may grant the motion only where there is no competent evidence or reasonable inference that would sustain a verdict for the nonmoving party. Queen City Farms, 126 Wash.2d at 98, 891 P.2d 718.
When reviewing a trial court's decision to deny a motion for judgment as a matter of law this court applies the same standard as the trial court. Sing v. John L. Scott, Inc., 134 Wash.2d 24, 29, 948 P.2d 816 (1997). Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say as a matter of law that no substantial evidence or reasonable inferences exist to sustain a verdict for the nonmoving party. Sing, 134 Wash.2d at 29, 948 P.2d 816; Industrial Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wash.2d 907, 915-16, 792 P.2d 520 (1990).
CAN A TELEVISION BE A WAGE?
Courtesy Ford argues that a television cannot be a wage as a matter of law, because RCW 49.46.010(2) defines "wages" as monetary compensation only. Byrne points out that "wages" should not be defined under chapter 49.46 RCW, as that is the Minimum Wage Act. He asserts that the definition of "wages" in this case should be under chapter 49.52 RCW, the chapter that specifically addresses wage deductions, contributions, and rebates. Ch. 49.52 RCW generally.
Byrne's argument is persuasive to a point. As he notes in his brief, it makes sense that the definition of "wages" under the Minimum Wage Act is limited to monetary compensation, as it would be impossible to tell if the minimum wage is being paid if wages were paid in anything other than money. Conversely, to apply the chapter that prohibits the rebate or kickback of wages (chapter 49.52 RCW), the term should be defined more broadly, because any compensation that actually is a wage should be protected from rebate demands by employers. We note that chapter 49.52 RCW does not define the term "wages." Byrne urges us to adopt the broadest possible interpretation of the term for purposes of this case because chapter 49.52 RCW is to be liberally construed.
We agree that "wages" should be defined broadly in the context of employers' demands for wage rebate. The anti-kickback statute is to be liberally construed to advance the legislature's intent to protect employee wages and assure payment:
[T]he fundamental purpose of the legislation, as expressed in both the title and body of the act, is to protect the wages of an employee against any diminution or deduction therefrom by rebating, underpayment, or false showing of overpayment of *311 any part of such wages. The act is thus primarily a protective measure, rather than a strictly corrupt practices statute. In other words, the aim or purpose of the act is to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer, and which the employer is obligated to pay, and, further, to see that the employee is not deprived of such right, nor the employer permitted to evade his obligation, by a withholding of a part of the wages ...

Ellerman v. Centerpoint Prepress, Inc., 143 Wash.2d 514, 520, 22 P.3d 795 (2001) (second emphasis added) (quoting Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 159, 961 P.2d 371 (1998)).
A television certainly could be a wage in this context if an employee were regularly paid in televisions as part of his employment agreement. And if an employer demanded a rebate of such a television wage and fired the employee if he refused, a wrongful termination action could lie. In this context, however, where the employee is paid a salary and receives commissions and bonuses from sales, at most the television at issue could only be a "bonus."
BONUS AS COMPENSATION
A discretionary bonus can be compensation under an implied contract, if given regularly so as to create an expectation that it will continue. Simon v. Riblet Tramway Co., 8 Wash.App. 289, 293, 505 P.2d 1291, review denied, 82 Wash.2d 1004, cert. denied, 414 U.S. 975, 94 S.Ct. 289, 38 L.Ed.2d 218 (1973). In Simon, the plaintiff received a bonus in each of the 10 years he was employed with his company before leaving in mid-1969. Simon, 8 Wash.App. at 290-91, 505 P.2d 1291. When he left, he sought a pro-rata share of his yearly bonus under chapter 49.52 RCW, the chapter under which Byrne asks this court to define "wages." Simon, 8 Wash.App. at 291, 293, 505 P.2d 1291. Simon's bonus had increased or remained the same each year, and the trial court found his salary to be inadequate compensation without it. Simon, 8 Wash.App. at 290-91, 505 P.2d 1291. Simon's bonus was $6,000 the two years before his departure. Simon, 8 Wash.App. at 290-91, 505 P.2d 1291. The trial court assumed the bonus for 1969 would have been the same and awarded him a pro rata share. The court on appeal affirmed on the theory that the parties had an implied agreement to pay a bonus as part of Simon's earned compensation. Simon, 8 Wash.App. at 293, 505 P.2d 1291.[4]
The court in Simon relied on Powell v. Republic Creosoting Co., 172 Wash. 155, 19 P.2d 919 (1933), a case with substantially identical facts to Simon. The court explained that
[i]n the beginning, the payment of $50, the bonus for the year 1916, may have been a gratuity only. Possibly the two succeeding years, when the bonus payments were $200 and $400 respectively, show nothing more than gratuities, but the eight years following, with substantial payments regularly made and regularly increasing, would seem to be something quite other than mere gifts, and to our minds this course of dealing suggests rather conclusively an implied agreement that respondent's annual salary should be the stated amount payable semi-monthly plus such additional sum as would be reasonable in the light of the services rendered for the particular year and the results accomplished thereby.
Simon, 8 Wash.App. at 292, 505 P.2d 1291 (emphasis added) (quoting Powell, 172 Wash. at 158, 19 P.2d 919).
Here, the jury specifically found no implied contract. Even viewing the facts in the light most favorable to Byrne, the television was at most a discretionary bonus, "in recognition of [Byrne's] extra efforts at the auction." Br. of Respondent at 15. It was not due him under an implied contract. But a discretionary *312 bonus, unless given consistently and repeatedly, is a mere gratuity, not compensation. See Powell, 172 Wash. at 158, 19 P.2d 919.
Under Simon and Powell, it is clear that in order to be considered compensation, a discretionary bonus must be given regularly to create an implied contract and reliance, otherwise, it is a mere gratuity. The television was not compensation as a bonus.
EVIDENCE OF TELEVISION AS WAGE
Courtesy Ford argues that there was no evidence that Byrne even considered the television a wage. Byrne claims Courtesy Ford waived any challenge to the definition of "wages" in the jury instructions because it did not object to the instructions at trial. But Courtesy Ford does not challenge the instruction on appeal; rather, it challenges the trial court's denial of its motions for judgment as a matter of law.
Byrne testified that the auction house, not his employer, gave him the television and that his manager later told him he could keep it. On appeal he also argues that "the jury was entitled to conclude that the TV initially belonged to Defendant, but that Defendant gave it to [him] in recognition of his extra efforts at the auction." Br. of Respondent at 15. Byrne further argues that "[t]he jury... was justified in concluding that Rick Hern recognized that [Byrne] was `due' some extra compensation for his efforts on behalf of the company, and gave him the television as compensation." Br. of Respondent at 14.
Each party is entitled to the benefit of evidence produced by the other. Provins v. Bevis, 70 Wash.2d 131, 136-37, 422 P.2d 505 (1967); Hector v. Martin, 51 Wash.2d 707, 710, 321 P.2d 555 (1958). We will uphold the denial of a motion for judgment as a matter of law if any reasonable inference sustains the verdict. Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 98, 882 P.2d 703, 891 P.2d 718 (1994).
Here, the jury could have accepted Courtesy Ford's theory that the television was awarded to the dealership initially and Byrne's testimony that Rick Hern gave Byrne the set the next day. The question here is whether it was reasonable for the jury to then infer that when Rick gave Byrne the television it was compensation. There was absolutely no testimony stating or even implying that Rick gave Byrne the television as compensation. Byrne did not present such testimony, because he claimed that he owned the television from the start. Courtesy Ford, of course, did not present such testimony, because it claimed that it owned the television and never gave it to Byrne. No evidence supported the claim that Rick gave Byrne the television as compensation.
We hold that as a matter of law, that this television was not a wage.[5]
The trial court erred in denying Courtesy Ford's motions for judgment as a matter of law.
ATTORNEY FEES ON APPEAL
Byrne requests attorney fees on appeal, but because he has not prevailed, we deny the request. RAP 14.2.
Reversed.
We concur: SEINFELD, P.J., and BRIDGEWATER, J.
NOTES
[1] The complaint alleged retaliation in violation of "RCW 49.48, et seq.; RCW 49.52 et seq." Clerk's Papers at 4.
[2] It is unclear from the record whether Byrne mentioned the size or value of the television set during this conversation.
[3] RCW 49.48.030 reads as follows:

In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.
[4] Regarding Simon's claim under chapter 49.52 RCW, the court held that RCW 49.52.050(2) and.070 are not meant to apply to the situation there, where a bona fide disagreement between employer and employee existed with regard to "whether a year-end payment was earned wages or merely a discretionary bonus." Simon, 8 Wash.App. at 293, 505 P.2d 1291 (emphasis added). The situation evidenced no intentional deprivation of wages as required to sustain a claim under RCW 49.52.050. Simon, 8 Wash.App. at 293, 505 P.2d 1291.
[5] Chapter 49.52 RCW makes willful wage withholding and/or demands of rebates a misdemeanor offense. See RCW 49.52.050. Damages under RCW 49.52.070 provide for exemplary damages in the amount of double the unlawfully rebated or withheld wage (here, the television). If the statute were the sole basis for Byrne's award, he would only be entitled to double the value of the wage, not the emotional distress and economic damages awarded to him. The chapter does not address wrongful termination as retaliation for refusing to rebate wages.