# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHARLES OLIVER, a married man in his individual capacity; DOROTHY DURRETT, an individual; and ISAAC OLIVER JR., a married man in his individual capacity, | No. 86268-5-I |
| Appellants, | DIVISION ONE |
| | UNPUBLISHED OPINION |
| v. | |
| HENRY A. GARRETT, and CRYSTAL GARRETT, a marital community; HENRY A. GARRETT, a married man in his individual capacity; CRYSTAL GARRETT, a married woman in her individual capacity; ERIC CLARK, an individual; the ESTATE OF GERALDINE GARRETT; and QUALSTAR CREDIT UNION, a Washington State chartered credit union; and ALL OTHER UNKNOWN PERSONS OR PARTIES CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE SUBJECT REAL PROPERTY DESCRIBED IN THE COMPLAINT HEREIN, | |
| Respondents. | |

MANN, J. — Isaac Oliver, Dorothy Durrett, and Charles Oliver (collectively, the siblings) appeal summary judgment dismissal of their lawsuit against their nephew,

Henry Garrett, arising from a dispute over title to real property. Because the siblings' claims are barred by the statute of limitations, or otherwise fail as a matter of law, summary judgment was appropriate. We affirm.

I

Aperlonie Oliver died in 1965 and left her home (the property) in Seattle's Central District to her four children, Geraldine, Isaac, Dorothy, and Charles Oliver.[1] At the time, Geraldine and Isaac were adults and Dorothy and Charles were minors.

After Geraldine learned about a non-profit home rehab program renovating homes in the Central District, she signed up to have the property renovated. A quitclaim deed was recorded on July 22, 1969, that named the grantors as "Geraldine Garrett, an unmarried woman, formerly known as Geraldine Oliver, individually and as guardian of Dorothy L. Oliver and Charles W. Oliver, both minors." In consideration of an agreement to rehabilitate, the deed conveyed the property to "Central Area Citizens' Committee of Seattle, Inc., a Washington non-profit corporation [(CACCS)]."

On July 29, 1969, Isaac and his wife transferred their interest in the property to Geraldine by quitclaim deed. The same day Geraldine again transferred her interest in the property to CACCS by quitclaim deed.

After the renovation was complete, in 1970, CACCS conveyed the property by statutory warranty deed to "Geraldine Garrett, a divorced woman."

Geraldine, Isaac, Dorothy, and Charles lived together at the property for several years. By 1973, the siblings had moved out and only Geraldine continued to live on the

---

[1] For clarity, we refer to the parties by their first names and intend no disrespect.

property. Geraldine lived on the property until 1999 when she went to live with her sister, Dorothy.

In 1992, Geraldine quitclaimed the property to her son, Henry Garrett.[2] Henry and his wife Crystal (the Garretts) lived at the property from 1992 to the present. They paid the property taxes, insured the property, and maintained and repaired the property at their own expense.[3] Over the decade, the Garretts borrowed against the property. In 2001, they granted a deed of trust for the property in exchange for a loan of $247,000 for home renovations and debt consolidation. The Garretts refinanced that loan in 2002 granting a deed of trust for the property for a loan of $275,000. And in 2007, the Garretts granted a deed of trust for the property to Wilmington Finance for a loan of $495,000. That money was used to purchase a property in West Seattle that was subsequently foreclosed on. Henry did not inform the siblings of any of the loans taken against the property. The siblings were not aware that the Garretts encumbered the property with over $600,000 in debt.

Geraldine died intestate on January 20, 2012; there was no probate of the estate and Henry did not serve as personal representative of the estate. Following Geraldine's death, her sister Dorothy discovered a handwritten document among Geraldine's belongings that was titled "my will" and was dated as revised on April 9, 1998. The document included the following statement, "house is to be sold and split between Henry, Eric, Charles, & Jr. & Dorothy. Sell for over 80,000."

---

[2] There is a dispute over the date the quitclaim deed was entered. Geraldine's signature on the quitclaim deed is dated June 22, 1991. The notary acknowledgment on the deed is dated June 2, 1992. A stamp on the quitclaim deed indicates June 23, 1992.

[3] In December 1996, Henry quitclaimed the property to "Henry A. Garrett and Crystal Garrett, husband and wife."

On January 21, 2022, the siblings sued the Garretts, Geraldine's other child, Eric Clark, the estate of Geraldine, Qualstar Credit Union, and any other party claiming an interest in the property. The siblings claimed an interest in the property and sought to quiet title and a partition by sale. The siblings asserted that Geraldine held the property in trust for the other siblings based on their oral agreement that Geraldine would live on the property and in exchange pay the taxes and maintenance. Then after Geraldine's death, the siblings claimed that they had the same oral agreement with Henry—that the Garretts would pay the taxes and maintenance in exchange for living on the property. The siblings asserted claims against the Garretts for breach of contract, breach of fiduciary duty, fraud/misrepresentation, and unjust enrichment.

The Garretts moved for summary judgment and dismissal of all claims. Henry declared that he had paid the mortgage since 1992, and that he had refinanced the property several times with some of the funds being used for renovation, repair, and maintenance. Henry also stated that Isaac Oliver and his accounting firm prepared and filed the Garretts' tax returns for many years which included documentation regarding the property.

The siblings responded that their action to quiet title was not subject to the statute of limitations and, because the oral agreement was partially performed, the statute of frauds did not bar the claim. The siblings asserted the claims were properly against the Garretts because Henry ratified the agreement in the family meetings following Geraldine's death. The siblings also asserted that the discovery rule tolled the statute of limitations until 2021 when they discovered the Garretts' ownership.

The siblings also moved for summary judgment. Supporting declarations asserted that Geraldine and the siblings met yearly to discuss the property, and other properties they co-owned, and they agreed that Geraldine would pay the property taxes and maintenance in exchange for living on the property indefinitely. The siblings contended that after Geraldine's death, Henry attended the family meetings and all of them agreed that the Garretts could continue "living at the property as Geraldine had." The siblings argued that they did not learn until September 10, 2021, about the 1992 quitclaim deed to Henry, or that the 1969 CACCS deed named only Geraldine.

On December 27, 2023, the trial granted summary judgment for the Garretts on all claims and counterclaims. The court denied the siblings' motion for summary judgment.

The siblings appeal.

II

This court reviews summary judgment orders de novo and performs the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). All facts and reasonable inferences are viewed in the light most favorable to the nonmoving party—in this case, Isaac, Dorothy, and Charles. Owen, 153 Wn.2d at 787. Summary judgment is proper if the record before the trial court establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

The siblings' complaint raised several causes of action. We address each in turn.

A

We begin with the siblings' cause of action for breach of contract because "[t]he gravamen of the claim determines the applicable statute of limitations." Aberdeen Fed. Sav. & Loan Ass'n v. Hanson, 58 Wn. App. 773, 776, 794 P.2d 1322 (1990). The gravamen of the siblings' complaint is breach of oral contract. The siblings contend that there was an agreement and understanding between Geraldine, Isaac, Dorothy, and Charles that each would retain their one-quarter interest in the property after completion of the rehabilitation project in 1968, and that after receiving title to the property from CACCS in 1969 Geraldine held the property in trust for the siblings. Then, after Geraldine's death in 2012, there was an agreement and understanding between the siblings and Henry, that the siblings each owned a one-quarter interest in the property and Henry owned one-half of Geraldine's one-quarter interest.

An action upon a contract, express or implied, which is not in writing must be brought within three years of accrual. RCW 4.16.080(3). A claim arising out of a contract accrues on breach of the contract, and not on discovery of the breach. 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 578, 146 P.3d 423 (2006).[4]

Assuming there was a valid oral contract between the siblings and Geraldine, it was breached in 1992 when Geraldine deeded the property to Henry. And even if

---

[4] In 1000 Virginia, the court recognized that the discovery rule may apply in construction contract cases where there is a latent defect that the plaintiff would be unable to detect at the time of breach. 158 Wn.2d at 579. The court, however, expressly rejected prior Court of Appeals decisions applying the discovery rule to other types of breach of contract cases. 1000 Virginia, 158 Wn.2d at 575-79. Thus, contrary to the siblings' argument, the discovery rule does not apply to their claim for breach of contract.

somehow re-entered during annual meetings, it was breached again in 2012 when Geraldine died without dividing the property.[5]

Assuming next that there was a valid oral contract between the siblings and Henry when he started attending annual meetings, any such contract was breached at the start when Henry granted multiple deeds of trust to the property encumbering it for over $600,000 without informing the siblings.

The siblings' claims for breach of oral contract are barred by the three-year statute of limitations.

B

The siblings allege that the Garretts were unjustly enriched. To prove unjust enrichment, the plaintiff must establish three elements: "(1) the defendant receive[d] a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." Young v. Young, 164 Wn.2d 477, 484-85, 191 P.3d 1258 (2008). "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." Young, 164 Wn.2d at 484.

"The statute of limitations applicable to a common law cause of action for unjust enrichment (which . . . is equivalent to a cause of action for restitution or implied in law contract) is three years." Davenport v. Wash. Educ. Ass'n, 147 Wn. App. 704, 737, 197 P.3d 686 (2008) (citing RCW 4.16.080(3); Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co., 139 Wn.2d 824, 837-38, 991 P.2d 1126 (2000)). Here, any benefit received by the

---

[5] Geraldine died in 2012 and any claims against Geraldine or her assets are barred under the probate and trust statute. RCW 11.40.051. By plaintiffs' own argument, their claims are against the Garretts not Geraldine or her estate.

Garretts came from Geraldine—not the siblings. Any unjust enrichment at the siblings' expense occurred when Geraldine received the entirety of the property interest from CACCS in 1969 and then transferred the entire property to Henry in 1992. Accordingly, plaintiffs' claim for unjust enrichment is time-barred.

C

The siblings seek to quiet title to the property. RCW 7.28.010 governs who may maintain an action to quiet title and provides that "[a]ny person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action." A plaintiff who has conveyed whatever interest they had in the property is not a party in interest under RCW 7.28.010 and lacks standing to bring a quiet title action. Magart v. Fierce, 35 Wn. App. 264, 266-67, 666 P.2d 386 (1983). Here, the siblings have not been on title to the property since 1969 and have not been in possession since 1973. There is no evidence that the siblings have a valid subsisting possessory interest in the property. Accordingly, plaintiffs may not maintain an action to quiet title as parties in interest.

Further, an action to recover possession of real property must be brought within 10 years. RCW 4.16.020. The siblings have not been in possession of the property since 1973 and thus, an action to recover possession of the property is time-barred.[6]

---

[6] The siblings' cause of action for partition is similarly barred by the 10-year statute of limitations. RCW 4.16.020; Hyde v. Britton 41 Wash. 277, 282, 83 P. 307 (1906) (holding that an action to partition realty cannot be maintained where neither plaintiff nor his ancestor, predecessor, or grantor, was seized or possessed of premises at any time within 10 years prior to commencement of action).

D

The siblings allege that the 1992 deed transferring the property from Geraldine to Henry was a fraudulent conveyance. CR 9(b) requires plaintiffs to plead fraud with particularity. "Particularity requires that the pleading apprise the defendant of the facts that give rise to the allegation of fraud." Union Bank, N.A. v. Blanchard, 194 Wn. App. 340, 359, 378 P.3d 191 (2016). The elements of fraud are (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. Blanchard, 194 Wn. App. at 359.

The siblings fail to plead fraud with particularity. Instead, they make broad claims that the 1992 deed was signed "fraudulently" and that the Garretts obtained the property by making "false representations." Such claims fail to meet the particularity requirements under CR 9(b).[7]

E

Lastly, the siblings' claim for breach of fiduciary duty presumes a fiduciary relationship by way of a trust. This claim fails. The siblings contend that Geraldine held the property in trust for their benefit but failed to plead or argue the existence of an express trust. Even if Geraldine had been trustee of an express trust holding the

---

[7] Moreover, even if the siblings had pleaded fraud with particularity, any fraud by Henry in the execution of the 1992 deed was against Geraldine's interest—not the siblings' interests. And even if Geraldine's estate could claim fraudulent conveyance, the remedy of a voidable deed would make it as though the conveyance had never been made. Curtiss v. Crooks, 190 Wash. 43, 66 P.2d 1140 (1937). If the 1992 conveyance had never been made, the title would stay in Geraldine's name. And because she died intestate, under the law of intestate succession the property would go to Geraldine's children—not to the siblings. RCW 11.04.015(2).

property for the siblings' benefit, the claim is time-barred because the breach occurred longer than three years ago. An action based on an express or constructive trust is subject to the three-year statute of limitations. Goodman v. Goodman, 128 Wn.2d 366, 373, 907 P.2d 290 (1995). And the siblings provide no argument or authority that the discovery rule applies to this claim under these facts.[8]

Because each of the siblings' claims fails either as a matter of law, or is barred by the applicable statute of limitations, we conclude that the trial court did not err by granting summary judgment for the Garretts.[9]

We affirm.[10]

_____
Mann, J.

WE CONCUR:

_____          _____
Chung, J.                                 Coburn, J.

---

[8] The siblings also fail to argue or persuade us that the imposition of a constructive trust is equitable against the Garretts who have been in sole possession of the property since 1999 and have paid the property taxes and maintenance since 1992.

[9] Accordingly, we do not address the siblings' remaining arguments as to each claim. As to the siblings' argument that the trial court erred by excluding evidence under the dead man's statute, even if the evidence had been considered, it fails to create a genuine issue of material fact. Nor does the evidence alter our conclusion that all of the siblings' claims are barred by the statute of limitations or fail as a matter of law.

[10] Respondents seek an award of attorney fees under RAP 18.9 arguing that the appeal is frivolous. We decline to award attorney fees.