93 P.3d 108 (2004)
151 Wash.2d 853
Jerry L. HISLE, Michael D. Nicholas, Dale A. Riccetti, Jerry Roth, Ron L. Shoup, individually, and on behalf of the class they represent, Respondents,
v.
TODD PACIFIC SHIPYARDS CORPORATION, a Delaware corporation, Petitioner.
No. 73357-1.
Supreme Court of Washington, En Banc.
Argued October 30, 2003.
Decided June 24, 2004.
*110 Talmadge & Stockmeyer, Philip Talmadge, Tukwila, for Petitioner.
Karr Tuttle Campbell, Richard Omata, Jennifer Burkhardt, Seattle, Bruce Heller, Seth Berntsen, Seattle, for Respondents.
FAIRHURST, J.
In this case, we determine that Washington's Minimum Wage Act (MWA), ch. 49.46 RCW, applies to a collective bargaining agreement (CBA) containing a one-time retroactive payment based on an hourly wage of actual hours worked, and that this lawsuit is not preempted by section 301 of the Labor Management Relations Act of 1947, Pub. Law No. 101, ch. 120, 61 Stat. 136 (1947) (LMRA), codified at 29 U.S.C. § 185(a), or barred by res judicata. We affirm the Court of Appeals and grant respondents costs and attorney fees.

I. FACTS
Petitioner, Todd Pacific Shipyards Corporation, constructs and repairs marine vessels. Respondents, Jerry L. Hisle, Michael D. Nicholas, Dale A. Riccetti, Jerry Roth and Ron L. Shoup are employees of Todd (hereinafter collectively Hisle). Todd and Puget Sound Metal Trades Council (PSMTC), a union representing Todd's employees, entered into a CBA covering all production, repair, and maintenance performed at Todd's Seattle facility. In February 1996, Todd and PSMTC commenced negotiations for a CBA to succeed the one due to expire later that year. After the Todd employees rejected three different agreements proposed by Todd and the unions representing its employees,[1] Todd and PSMTC referred the matter to an arbitrator. Based upon a stipulation by Todd and PSMTC, the arbitrator authorized one of the agreements that the Todd employees previously rejected.[2] The agreement contained the following provision:

 Wage and Fringe Increase
 Effective 8-1-98 $.61/hour
 Wage/Fringe

This increase will be applied to all Schedule "A" rates listed above except Firewatch.
Retroactive payments of $.60 for each non-Washington State Ferry Project attendance hour from August 1, 1996 until the execution date of the contract (less applicable employee deductions) shall be made to all non-Washington State Ferry Project *111 employees that were actively employed on the execution date of the contract or had seniority rights as of the execution date of the contract.
Clerk's Papers (CP) at 232. Todd issued checks to eligible employees at the rate of $.60 per attendance hour[3] without regard to whether the hours were regular or overtime.
Two hundred Todd employees (including the named respondents in this case) then filed a complaint against PSMTC and Todd in the United States District Court seeking to nullify the CBA. Adams v. Puget Sound Metal Trades Council, AFL-CIO & Todd Pac. Shipyards Corp., No. C98-0205R (hereinafter Adams). The first cause of action asserted that PSMTC "violated membership ratification requirements of applicable union constitutions and by-laws" when it submitted to the arbitrator a CBA that the employees previously rejected, and that Todd knew or should have known that PSMTC exceeded its authority in submitting the agreement. CP at 21. The second cause of action asserted that PSMTC (or PSMTC's actions) breached its duty of fair representation.
Todd counterclaimed, alleging that if the employees prevailed, it was entitled to repayment of all wage increases and benefits it had paid under the new CBA. Similarly, PSMTC's answer asserted that the Todd employees were estopped from nullifying the new CBA because they had already received material benefits thereunder. PSMTC and the Todd employees signed a settlement agreement and release whereby the employees agreed to dismiss with prejudice the "Action, and all claims or other causes of action asserted therein," CP at 140, PSMTC agreed not to ratify an agreement without the approval of Todd's employees, and both PSMTC and Todd's employees agreed to release "all claims, demands, liabilities, and causes of action of every kind stemming from or any way related to the claims raised in this Action." CP at 141. In response to the settlement, Todd dismissed its counterclaim.
Respondents and 877 other like-situated employees worked overtime hours during the period covered by the retroactive payment, August 1, 1996, and the execution date of the CBA. Hisle brought this action against Todd in King County Superior Court alleging that Todd's failure to pay time and one-half for overtime hours violated the MWA and sought class certification. The parties mainly disagreed about the characterizations and/or effect of the retroactive payment. Todd argued that it and PSMTC, as the parties to the CBA, intended the retroactive payment to be a ratification inducement[4] and that no overtime pay was due because the MWA does not apply to a ratification inducement. Hisle argued that regardless of the retroactive payment's characterization, the MWA overtime provisions applied to the retroactive payment as a matter of law because it was tied to hours worked.
Both parties moved for summary judgment. The trial court rejected Hisle's motions for class certification and summary judgment and granted Todd's motion for summary judgment. It also dismissed Hisle's lawsuit with prejudice, finding that it was preempted by section 301 of the LMRA, and barred by res judicata and the Adams settlement agreement.
Hisle appealed and the Court of Appeals reversed the trial court orders on the competing summary judgment motions. Hisle v. Todd Pac. Shipyards Corp., 113 Wash.App. 401, 54 P.3d 687 (2002). The Court of Appeals *112 found the MWA entitled Hisle to overtime pay for the retroactive period, id. at 421-26, 54 P.3d 687, found that the case was not preempted by section 301 of the LMRA, id. at 417-20, 54 P.3d 687, or barred by res judicata. Id. at 410-14, 54 P.3d 687. The Court of Appeals also remanded the motion for class certification and awarded Hisle attorney fees on appeal. Id. at 427, 430, 54 P.3d 687.[5]
We granted Todd's motion for discretionary review. Hisle v. Todd Pac. Shipyards, Corp., 149 Wash.2d 1017, 72 P.3d 761 (2003). We affirm the Court of Appeals on all three issues and award Hisle attorney fees.

II. STANDARD OF REVIEW
This court reviews summary judgment orders de novo, performing the same inquiry as the trial court. Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993). In conducting this inquiry, this court must view all facts and reasonable inferences in the light most favorable to the nonmoving party. City of Lakewood v. Pierce County, 144 Wash.2d 118, 125, 30 P.3d 446 (2001). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "A material fact is one upon which the outcome of the litigation depends, in whole or in part." Barrie v. Hosts of Am., Inc., 94 Wash.2d 640, 642, 618 P.2d 96 (1980).

III. ANALYSIS

A. The Overtime Provisions of the MWA Apply to the Retroactive Payment Contained in the CBA Signed by Todd and PSMTC
Whether the MWA applies to retroactive payments contained in collective bargaining agreements is an issue of first impression in Washington. Hisle, 113 Wash.App. at 429, 54 P.3d 687. Consistent with Washington's status as a pioneer for protection of employee rights, Drinkwitz v. Alliant Techsystems, Inc., 140 Wash.2d 291, 300, 996 P.2d 582 (2000), the MWA provides that "no employer shall employ any of his employees for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." RCW 49.46.130(1). "Regular rate" is "the hourly rate at which the employee is being paid, but may not be less than the established minimum wage rate." WAC 296-128-550. This court found that the legislature "intended to allow a broad and flexible interpretation of the term [regular rate] so long as the purposes of the Washington Minimum Wage Act are satisfied." Inniss v. Tandy Corp., 141 Wash.2d 517, 532, 7 P.3d 807 (2000). Although employees and employers may not bargain away these minimum requirements, they are free to bargain collectively "in order to establish wages or other conditions of work in excess of the applicable minimum." RCW 49.46.110. Wages are defined as "compensation due to an employee by reason of employment." RCW 49.46.010(2).
To support their opposing positions, both Todd and Hisle cite Minizza v. Stone Container Corp., a Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, case.[6]Minizza v. Stone Container Corp. Corrugated Container Div. E. Plant, 842 F.2d 1456 (3rd Cir.1988). Todd argues that Minizza explains that the purpose of the retroactive payment supersedes the manner in which it is calculated. Pet. for Review at 10. Hisle argues that Minizza explains that payments tied to hours worked are subject to overtime requirements. Answer to Pet. for Review at 13.
Minizza involved a ratification inducement of two lump sum payments ($750 and $500). Minizza, 842 F.2d at 1458. To be eligible for the first payment, an employee had to have *113 active employee status for three months prior to the payment. Id. To be eligible for the second payment, an employee had to have such status for six months prior to the payment. Id. Because the payments were not tied to hours worked or services rendered, the Minizza court found that the payments were not made as compensation for hours of employment which satisfied the 29 U.S.C. § 207(e)(2) exception. Id. at 1462. Therefore, overtime did not apply. Id.
Minizza is not directly on point because it limited itself to its facts, id. at 1463, involved lump sum payments, id. at 1458, and was based on 29 U.S.C. § 207(e)(2), an exception that does not exist in the MWA. Minizza, at 1461. However, Minizza's dictum indicates that the overtime provisions of the MWA do apply to the retroactive payment. Id. at 1460 ("This sum can be allocated solely as compensation on an hourly basis (in which event the payment would be fully includable in the `regular rate')"), id. at 1462 ("If the payments were made as compensation for hours worked or services provided, the payments would have been conditioned on a certain number of hours worked or on an amount of services provided."). Id.
We agree with Hisle and find that the retroactive payment contained in the new CBA is tied to hours worked and, therefore, is subject to the overtime provisions of the MWA. We reject Todd's and PSMTC's assertion that the payment was a ratification inducement. The CBA to which they stipulated, and which the arbitrator ordered, makes no indication that the payment is a ratification inducement, lists the hourly retroactive payment increases under the heading "Wage and Fringe Increase," and specifically ties the hourly retroactive payment to hours worked. CP at 232. But even if properly characterized as a ratification inducement, under the facts of this case, the retroactive payment is subject to the MWA overtime provisions. We affirm the Court of Appeals determination that the overtime provisions of the MWA apply to the retroactive payment.

B. Section 301 of the LMRA Does Not Preempt Hisle's Claim
Section 301 of the LMRA provides federal court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization," and enables federal courts to establish common law to address such issues. 29 U.S.C. § 185(a); Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 450-51, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). LMRA supremacy "ensure[s] uniform interpretation of collective-bargaining agreements, and thus ... promote[s] the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In furtherance of these supremacy policies, section 301 preemption occurs where the state claim "is inextricably intertwined with consideration of the terms of the labor contract," Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), and application of state law "requires the interpretation of a collective-bargaining agreement." Lingle, 486 U.S. at 413, 108 S.Ct. 1877; see also Atchley v. Heritage Cable Vision Assocs., 101 F.3d 495, 500-02 (7th Cir.1996) (claim based on delinquent payment of wages is preempted by section 301 of the LMRA because claim required interpretation of a CBA to determine when employer was required to pay the wage increases and bonuses).
Preemption is the exception, not the rule in Washington:
In Washington, there is a strong presumption against finding preemption. Pioneer First Fed. Sav. Loan Ass'n v. Pioneer Nat'l Bank, 98 Wash.2d 853, 659 P.2d 481 (1983). Preemption may be found only if federal law "clearly evinces a congressional intent to preempt state law", or there is such a "`direct and positive'" conflict "that the two acts cannot `be reconciled or consistently stand together' ..." Pioneer, at 856-57, 659 P.2d 481 (quoting State v. Williams, 94 Wash.2d 531, 538, 617 P.2d 1012, 24 A.L.R.4th 1191 (1980)).
Dept of Labor Indus. v. Common Carriers, Inc., 111 Wash.2d 586, 588, 762 P.2d 348 (1988). Moreover, section 301 generally does not preempt the MWA. Schneider v. Snyder's Foods, Inc., 95 Wash.App. 399, 401, 976 *114 P.2d 134 (1999). "[T]he general preference for arbitration is outweighed by the statutory requirements of the Minimum Wage Act and the strong public policy ... against depriving union employees of statutory rights that undeniably would be available to nonunion employees." Ervin v. Columbia Distrib., Inc., 84 Wash.App. 882, 891, 930 P.2d 947 (1997).
In Commodore v. University Mechanical Contractors, Inc., 120 Wash.2d 120, 839 P.2d 314 (1992), this court adopted a preemption model finding that "section 301 should not preempt nonnegotiable or independent negotiable claims."[7]Id. at 131, 839 P.2d 314. The right to overtime under the MWA is a nonnegotiable state statutory right. See RCW 49.46.110, .130(1). Therefore, consistent with our state Courts of Appeal which have consistently held that section 301 of the LMRA does not preempt MWA claims,[8] Hisle's claim  one involving the nonnegotiable state right to overtime under the MWA  is not preempted by section 301 of the LMRA.

C. Res Judicata Does Not Bar Hisle's Claim
The party asserting the defense of res judicata[9] bears the burden of proof. Civil Serv. Commn. of City of Kelso v. City of Kelso, 137 Wash.2d 166, 172, 969 P.2d 474 (1999). Res judicata is the rule, not the exception:
"`The general doctrine is that the plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'"
Schoeman v. N.Y. Life Ins. Co., 106 Wash.2d 855, 859, 726 P.2d 1 (1986) (quoting Sayward v. Thayer, 9 Wash. 22, 24, 36 P. 966, 38 P. 137 (1894)). However, res judicata does not bar claims arising out of different causes of action, or intend "to deny the litigant his or her day in court." Id. at 860, 726 P.2d 1.
The threshold requirement of res judicata is a final judgment on the merits in the prior suit.[10]Id. Once that threshold is met, res judicata requires sameness of subject matter, cause of action, people and parties, and "the quality of the persons for or *115 against whom the claim is made." Rains v. State, 100 Wash.2d 660, 663, 674 P.2d 165 (1983).
The trial court found that Adams was res judicata to Hisle's claim. The Court of Appeals disagreed, finding that the subject matter and causes of action were not the same.
We first turn to the res judicata requirement of identity of subject matter. This court has held that the same subject matter is not necessarily implicated in cases involving the same facts. See Hayes v. City of Seattle, 131 Wash.2d 706, 712, 934 P.2d 1179 (1997) (finding different subject matter in cases involving a master use permit where the initial case sought to nullify the city council decision and the second case sought damages); Mellor v. Chamberlin, 100 Wash.2d 643, 646, 673 P.2d 610 (1983) (finding different subject matter in cases involving the sale of property where the initial case sought to establish misrepresentation and the second case sought to establish a breach of the covenant of title).
We find that this case involves a different subject matter than Adams. Whereas Adams concerned the procedures used to adopt the new CBA and sought to invalidate the new CBA, the current claim presumes the validity of the agreement and seeks to apply the MWA to it. Because we find that identity of subject matter does not exist, and because the res judicata test is a conjunctive one requiring satisfaction of all four elements, we do not analyze the other res judicata requirements.

D. Respondents Are Entitled to Costs and Attorney Fees
The remedies provision of the MWA states:
Any employer who pays any employee less than wages to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount of such wage rate, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court.

RCW 49.46.090(1) (emphasis added). RAP 18.1 addresses the procedures for requesting attorney fees and expenses. Former RAP 18.1 (2002), which was effective until September 1, 2003, caused confusion as to whether cost and fee requests asserted in the Court of Appeals continued at this court.[11] Changes to RAP 18.1 effective September 1, 2003, resolved this confusion by stating that expenses and attorney fee requests made in an opening brief at the Court of Appeals continue at this court.[12]
Hisle requested costs and attorney fees pursuant to RAP 18.1(b) and RCW 49.46.090(1) in a February 26, 2002, motion to supplement their brief to the Court of Appeals. In its September 16, 2003, ruling, the Court of Appeals granted the motion, as well as the costs and attorney fees. Hisle, 113 Wash.App. at 430, 54 P.3d 687. We affirm this award. At this court, Hisle requested attorney fees for preparing the answer, but did not reassert a request for costs and attorney fees. Answer to Pet. for Review at 20. Consistent with the liberal interpretation we must afford court rules, RAP 1.2(a), we find that the recent amendments to the Rules of Appellate Procedure apply and grant Hisle's costs and attorney fees in this court.

IV. CONCLUSION
We affirm the Court of Appeals determination that the overtime provisions of the MWA apply to the retroactive payment contained *116 in the new CBA. The MWA provisions apply as a matter of law because the retroactive payment was tied to hours worked. We affirm the Court of Appeals determination that this lawsuit is not preempted by section 301 of the LMRA. As a nonnegotiable state right, overtime is not subject to federal preemption. We affirm the Court of Appeals determination that res judicata does not bar this lawsuit. Whereas Adams attacked the validity of the new CBA, the case at bar presumes its validity and seeks to apply the MWA overtime provisions to it. Finally, we award Hisle costs and attorney fees.
ALEXANDER, C.J., IRELAND, MADSEN and CHAMBERS, JJ., concur.
SANDERS, J. (dissenting).
Todd Pacific Shipyards Corporation (Todd) and Puget Sound Metal Trades Council (PSMTC) mutually negotiated a replacement collective bargaining agreement (CBA) and agreed to a one-time lump sum payment to Todd's employees. Although the payment was calculated by multiplying each employee's respective hours worked by $.60, unchallenged evidence demonstrated (1) Todd and PSMTC intended the payment to be an incentive to the employees to ratify the proposed CBA (1997 CBA) and (2) the parties expressly acknowledged the payment was not intended to retroactively increase wages.
Notwithstanding, the majority holds this one-time lump sum payment is in fact a retroactive wage increase and thereby subject to the overtime requirements of the Washington Minimum Wage Act (MWA), chapter 49.46 RCW. As I cannot subscribe to a view which wholly undermines the necessary contractual freedom needed by employers and unions to amicably resolve labor disputes, and because the MWA claim of the plaintiffs[1] cannot be resolved without interpreting the pertinent collective bargaining agreements, I dissent.

I. Courts May Not Foist a Different Wage Upon an Employment Contract If the Mutually Accepted Wage Is above the Statutory Minimum
The majority holds the MWA overtime requirements apply because the clause at issue "specifically ties the hourly retroactive payment to hours worked." Majority at 113. Thus, according to the majority, whenever payment is offered as a signing bonus and its method of calculation factors in number of hours previously worked, overtime compensation is statutorily mandated. This rationale excessively broadens the scope of the MWA beyond the statute's plain language.

A. Statutorily Mandated Overtime Compensation Is Based on Hourly Wage as Negotiated in Employment Contract
The MWA requires employers to pay an employee at least "one and one-half times the regular rate at which he is employed" for every hour that employee works in excess of 40 during any given week. RCW 49.46.130(1) (emphasis added). And while RCW 49.46.130 exempts certain employees[2] or types of employment[3] from application of this requirement (none of which is at issue here), the "regular rate at which [the employee] is employed" remains the common denominator that must be calculated to ascertain what the qualifying employee is owed for overtime hours worked. Id.
The legislature did not expressly define "regular rate" when it enacted the MWA. See RCW 49.46.010 (defining various terms other than "regular rate"); Inniss v. Tandy Corp., 141 Wash.2d 517, 523, 7 P.3d 807 (2000) (noting the MWA "does not define the term `regular rate' under RCW 49.46.130(1)."). Yet we need not interpret the term blindly.
*117 The Department of Labor and Industries (DLI) has defined "regular rate" by regulation:

The regular rate of pay shall be the hourly rate at which the employee is being paid, but may not be less than the established minimum wage rate. Employees who are compensated on a salary, commission, piece rate or percentage basis, rather than an hourly wage rate, unless specifically exempt, are entitled to one and one-half times the regular rate of pay for all hours worked in excess of 40 per week. The overtime may be paid at one and one-half times the piecework rate during the overtime period, or the regular rate of pay may be determined by dividing the amount of compensation received per week by the total number of hours worked during that week. The employee is entitled to one and one-half times the regular rate arrived at for all hours worked in excess of 40 per week.
WAC 296-128-550 (emphasis added). While the DLI's interpretation does not handcuff the judiciary from reaching a different construction, basic rules of statutory construction dictate the agency's view "is entitled to considerable weight in determining the legislative intention, and the persuasive force of such interpretation is strengthened when the legislature, by its failure to amend or by amending some other particular without repudiating the administrative construction, silently acquiesces in the administrative interpretation." Bradley v. Dep't of Labor & Indus., 52 Wash.2d 780, 786-87, 329 P.2d 196 (1958), quoted in Seattle-King County Council of Camp Fire v. Dep't of Revenue, 105 Wash.2d 55, 66, 711 P.2d 300 (1985), and Hart v. Peoples Nat'l Bank of Wash., 91 Wash.2d 197, 201, 588 P.2d 204 (1978). There is no reason to depart from the DLI's interpretation.
Under the DLI's definition the "regular rate of pay" generally references an employee's hourly wage if that is the formula mutually negotiated in an employment contract. Yet the definition also contemplates salary paid employees who are still entitled to statutory overtime benefits, as evidenced by the latter portion of the regulation. See WAC 296-128-550; see also Inniss, 141 Wash.2d at 529, 7 P.3d 807. Employers and employees are free to bargain the "regular rate at which [the employee] is employed," RCW 49.46.130, so long as the hourly rate does not fall below the statutory minimum. See WAC 296-128-550. In short, freedom of contract  though slightly limited  remains.
This was precisely the issue in Inniss, a case which the majority cites for the proposition "the legislature `intended to allow a broad and flexible interpretation of the term [regular rate] so long as the purposes of the Washington Minimum Wage Act are satisfied.'" Majority at 112 (quoting Inniss, 141 Wash.2d at 532, 7 P.3d 807). But the majority reads the quote out of context. Inniss considered whether Tandy Corporation[4] violated the MWA by calculating a store manager's "regular rate" pursuant to a scale in which the weekly salary fluctuated based on how many hours the manager worked. Inniss, 141 Wash.2d at 520-22, 7 P.3d 807. We held Tandy Corporation's definition of "regular rate" was "permissible ... because the term is subject to a broad and flexible interpretation," id. at 534, 7 P.3d 807, and because the employees'"compensation exceeded that required under the statutory minimum hourly wage," id. at 535, 7 P.3d 807. Our recognition of the legislature's intent to permit a "broad and flexible interpretation" of "regular rate" referenced the expansive freedom of employers and employees to mutually determine a wage or salary, so long as such an agreement did not run afoul of the MWA's purposes. Id. at 534, 7 P.3d 807; see also RCW 49.46.005 (stating MWA's purposes). Inniss did not reference, much less approve, the court's prerogative to impose its view of any payment offered by an employer as an alteration of a previously established "regular rate of pay." Quite the contrary, Inniss stands for the proposition that employers and employees may negotiate any "regular rate" that may not be judicially altered so long as that "regular rate" does not sink *118 below the minimum wage required by statute. As a consequence, the method by which certain compensation is calculated is not dispositive of whether or not the payment qualifies as the "regular rate of pay." WAC 296-128-550.

B. Federal Authority Is Not Applicable Where Fair Labor Standards Act Differs from Washington Minimum Wage Act
Because of the DLI's reasoned interpretation of the term "regular rate" as used by RCW 49.46.130(1), any reliance on Minizza v. Stone Container Corp. Corrugated Container Division East Plant, 842 F.2d 1456 (3d Cir.1988) or any other federal case interpreting the Fair Labor Standards Act's (FLSA)[5] definition of "regular rate"[6] for that matter is inappropriate, notwithstanding both parties' decision to hinge their arguments on it. See majority at 112-13. Minizza held two lump sum payments offered by the employer were ratification inducements and therefore properly exempted under 29 U.S.C. § 207(e)(2)[7] from augmenting the employee's regular rate of compensation. Minizza, 842 F.2d at 1460. In dicta the court implied the lump sum payments might have increased the employee's regular rate of pay had "the payments... been conditioned on a certain number of hours worked or on an amount of services provided." Id. at 1462. The majority claims this language supports its claim the lump sum payment at issue in this case qualifies as a retroactive wage increase. Majority at 112-13. Two reasons belie this analysis.
First, though FLSA cases are helpful when interpreting the MWA, we have consistently noted Washington courts need not walk directly in the federal judiciary's footsteps as the two statutes are not one and the same. See, e.g., Drinkwitz v. Alliant Techsys., Inc., 140 Wash.2d 291, 298, 996 P.2d 582 (2000) ("[T]he MWA and FLSA are not identical and we are not bound by such authority."); Weeks v. Chief of State Patrol, 96 Wash.2d 893, 897, 639 P.2d 732 (1982) ("While we are free to use federal cases which interpret FLSA provisions similar to our own, we are not bound by them."). This is especially true when the FLSA provision is substantively different from the corresponding section in the MWA. The FLSA expressly defines "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). The statute lists numerous exceptions to this definition, see 29 U.S.C. § 207(e)(1)-(8), but the provided definition is for the most part an all-inclusive classification of an employee's compensation. Conversely the MWA does not define the term. RCW 49.46.130 enumerates several types of employees and occupations to which overtime benefits are inapplicable. And nothing in the MWA or Washington case law (prior to the Court of Appeals decision below) suggests the legislature intended to adopt the federal definition which includes "all remuneration." 29 U.S.C. § 207(e). Rather the DLI's regulatory definition of "regular rate of pay" in WAC 296-128-550 limits the scope of that denominator to an employee's hourly wage and nothing more, so long as that wage exceeds the statutory minimum. And it is that definition which we must follow.
Second, and more fundamentally, the majority expressly acknowledges its reliance on Minizza is limited to the opinion's dicta, not the holding. Dictum carries little precedential weight when it originates in Washington courts. Malted Mousse, Inc. v. Steinmetz, 150 Wash.2d 518, 531 & n. 9, 79 P.3d 1154 (2003) (abrogating erroneous rule of law *119 from Court of Appeals, noting its origins in dicta). It carries even less weight when it comes from a foreign court construing a different statute. See People v. Axentiou, 598 N.Y.S.2d 928, 930-31, 158 Misc.2d 19 (N.Y.Sup.Ct.1993) (refusing to follow dicta in foreign jurisdictions as proposition was not incorporated into New York statute). Minizza is inapposite and the majority's reliance on it is unwarranted.

C. An Employee's Hourly Wage Is That Amount Paid as Consideration for Services Rendered
Because the employee's hourly wage is the basis for determining an employee's "regular rate of pay," it is helpful to consider how both the MWA and courts define a "wage." The MWA defines "Wage" as "compensation due to an employee by reason of employment." RCW 49.46.010(2) (emphasis added). Though no Washington court has considered whether a ratification inducement such as this alters the employee's "regular rate" of pay, RCW 49.46.130(1), courts have looked to both the purpose of the compensation and regularity with which it is given to determine whether such compensation is or is not a wage.
Byrne v. Courtesy Ford, Inc., 108 Wash.App. 683, 32 P.3d 307 (2001), review denied, 146 Wash.2d 1019, 51 P.3d 87 (2002), is instructive. There an employee for an auto dealership won a television in a raffle while purchasing cars on behalf of the dealership at an auction. Id. at 685, 32 P.3d 307. When the employee refused to give the television to the dealership, he was terminated. Id. at 686, 32 P.3d 307. He successfully sued the dealership for wrongful termination and breach of contract, and was awarded damages which contemplated the television as a lost "wage" under the antikickback statute, chapter 49.52 RCW. Byrne, 108 Wash.App. at 686-87, 32 P.3d 307. The Court of Appeals reversed, recognizing a television could be a wage "if an employee were regularly paid in televisions as part of his employment agreement." Id. at 689, 32 P.3d 307. But since there was no evidence to suggest the dealership gave the employee the television as compensation for services rendered, the court held the television was not a wage as a matter of law. Id.
Even more on point is Teamsters, Local 117 v. Northwest Beverages, Inc., 95 Wash.App. 767, 976 P.2d 1262 (1999), which involved a CBA which permitted employees to accumulate sick leave but prohibited them from cashing out any unused leave. Id. at 768, 976 P.2d 1262. The Court of Appeals held the sick leave did not constitute "`wages due'" under RCW 49.48.010,[8] noting the dearth of legislative indication in either RCW 49.48.010 or the MWA that a contingent benefit such as sick leave vested the employees with the right to payment. Id. at 768-69, 976 P.2d 1262.
What can be gleaned from these authorities is that payment by an employer is not a "wage" unless the employee has a vested right to such payment by sole reason of his or her services rendered to the employer. If some other contingency must occur, i.e., illness, such benefit is not a "wage."
In sum, it is the employee's hourly wage (if that is the method of calculating said compensation) that is the determinative multiplier governing what overtime amount is owed when the employee's hours exceed 40 in a given week. This case then turns on what exactly was the "regular rate at which [Todd's employees were] employed." RCW 49.46.130(1). If the lump sum payment provided by the 1997 CBA did not alter this rate, then Todd's employees were compensated every penny statutorily mandated under the MWA. Such a determination hinges on an interpretation of the respective collective bargaining agreements and is therefore preempted by federal labor law. But even if federal law did not preempt Hisle's claim, the hourly rate applicable to Todd's employees during the pertinent time frame was governed by an entirely separate agreement which remained unmodified by the payment clause at issue.

*120 II. Preemption Is Mandated Where Resolution of the Employees' Claim Is Based on an Interpretation of the Collective Bargaining Agreement
The majority's erroneous view that use of a per hour formula to induce ratification ipso facto triggers the MWA misinterprets the necessary step of calculating the "regular rate at which [the employee] is employed," the threshold inquiry for determining how much overtime compensation is owed. See supra pp. 110-11. To answer this inquiry we must examine the two pertinent collective bargaining agreements which governed the relationship between Todd and its employees to determine whether the payment clause at issue modified the collective bargaining agreement which governed the wage rates. Such examination, however, is forbidden by federal law.

A. Interpretation of Collective Bargaining Agreement Requires Preemption Pursuant to Federal Policy
Section 301 of the Labor Management Relations Act (LMRA)[9] (hereinafter Section 301) preempts an employee's state law claim if resolution of the claim hinges on the court's interpretation of a CBA. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Preemption in this context means the employee's claim is governed by the terms of the CBA and must be resolved by resorting to federal rules of law to interpret the CBA, which would generally occur under the CBA's arbitration procedures. Id. at 404, 411 & n. 11, 108 S.Ct. 1877.[10] In Lingle the plaintiff brought a retaliatory discharge claim based on Illinois law after the employer terminated her for allegedly filing a false workers' compensation claim. Id. at 401, 108 S.Ct. 1877. In addition to the state law remedy, the CBA which governed the plaintiff's employment provided a separate remedy for retaliatory discharge. Id. at 402, 108 S.Ct. 1877. The Seventh Circuit Court of Appeals held the claim was preempted, but the United States Supreme Court reversed, holding the state law claim was not preempted even though it arose out of the same facts as her claim under the CBA. Id. at 402-03, 408-410, 108 S.Ct. 1877. The Court held:
[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles  necessarily uniform throughout the Nation  must be employed to resolve the dispute.
Id. at 405-06., 108 S.Ct. 1877
In Commodore v. University Mechanical Contractors, Inc., 120 Wash.2d 120, 130-31, 839 P.2d 314 (1992), we first considered the scope of Lingle to hold interpretation of a CBA is not necessary, thereby preventing Section 301 preemption, if the Washington right allegedly violated is either a nonnegotiable right or an independent negotiable right. In so doing we reversed a trial court's dismissal of an employee's racial discrimination claim, reasoned the employee's claim based on his statutory right to be free from racial discrimination in the workplace[11] "could have been brought in the absence of a CBA." Id. at 132, 839 P.2d 314.[12]
The majority holds Hisle's MWA claims are not preempted because it "involve[es] the nonnegotiable state right to overtime." Majority *121 at 114. This conclusion oversimplifies the case. Certainly any employee is entitled to overtime compensation so long as he or she is not exempted from the overtime requirement. See RCW 49.46.130(2). But simply because a nonnegotiable right is involved does not displace the necessity to interpret the CBA at issue to resolve the claim. Lingle expressly recognized such a scenario:
Petitioner points to the fact that the Illinois right to be free from retaliatory discharge is nonnegotiable and applies to unionized and nonunionized workers alike. While it may be true that most state laws that are not pre-empted by § 301 will grant nonnegotiable rights that are shared by all state workers, we note that neither condition ensures nonpre-emption. It is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be pre-empted by § 301. Similarly, if a law applied to all state workers but required, at least in certain instances, collective-bargaining agreement interpretation, the application of the law in those instances would be pre-empted.
Lingle, 486 U.S. at 408, 108 S.Ct. 1877 n. 7.[13]
This case does not concern whether these employees are entitled to overtime benefits required under RCW 49.46.130(1), as the issue is not whether their employment exempts them from application of the statute's overtime requirements. See RCW 49.46.130(2). An example of such a case would involve an employee's MWA lawsuit that queried the court whether or not the employee was a "[s]easonal employee[ ] who [is] employed at concessions and recreational establishments," RCW 49.46.130(2)(d), or was "exempted pursuant to RCW 49.46.010(5)," RCW 49.46.130(2)(a). Preemption would be completely inappropriate in those cases, as was true in both Lingle and Commodore.
To the contrary Hisle's claim turns on the critical question of what the mutually negotiated wage was between Todd and Todd's employees. Determination of this wage turns on an interpretation of the CBA in question, which is illustrated by the majority's justification in addition to its hourly rate rationale to apply the MWA to this payment. The majority claims the payment is subject to the MWA overtime requirements because the 1997 CBA "makes no indication that the payment is a ratification inducement [and] lists the hourly retroactive payment increases under the heading `Wage and Fringe Increase.'" Majority at 113 (quoting Clerk's Papers (CP) at 232). This rationale assumes the parties' failure to include the precise nomenclature "ratification inducement" signals their intent to increase the "regular rate at which [the employee] is employed." RCW 49.46.130(1). Moreover the majority assumes the specific location of the clause under the heading "`Wage and Fringe Increase'," CP at 232, implies contractual intent to alter the employees' "regular rate," as if locating the clause under another heading would change the substantive effect of the contractual language. For example, if this clause had appeared under section 3.5, entitled "Seniority," CP at 214, would this payment apply only to those employees with seniority despite clear language indicating payment should be made to "all non-Washington State Ferry Project employees that were actively employed on the execution date of the contract or had seniority rights as of the execution date of the contract," CP at 232 (emphasis added)? I doubt it. But regardless of how that question should be answered, the analysis to resolve the inquiry rests on interpreting the provision. This is precisely what Section 301 prohibits. Lingle, 486 U.S. at 413, 108 S.Ct. 1877.
Because this case does not involve an inquiry into whether Todd's employees are entitled to overtime  a proposition no one disputes  but instead whether a certain payment modified the determinative factor *122 needed to calculate how much overtime is owed, i.e., "regular rate at which [the employee] is employed," RCW 49.46.130(1), we are forced to examine and interpret the CBA. Federal law therefore preempts Hisle's claim.

B. Even Assuming Contract Interpretation Were Appropriate, Hisle's Wages Were Governed by the Unmodified Previous Collective Bargaining Agreement
Though interpretation of the CBA is forbidden under Section 301, the facts of this case demonstrate the regular rate of pay which governed the relationship during the pertinent time frame did not increase.
Prior to execution of the 1997 CBA the relationship between Todd and its employees was governed by a previously executed and ratified CBA that took effect in 1993 (1993 CBA). The 1993 CBA established standard wages which increased annually and varied according to the respective job, as specified in "wage scales" on which the employee's compensation was based. CP at 34; see also CP at 48 (Schedule A wage scale). For example as of April 1, 1996, a Carpenter Journeyman made $15.25 per hour, an Op Engineer Journeyman made $15.85 per hour, and a Laborer-On Shipboard Work made $14.25 per hour, to name a few. See CP at 48. Wages also increased every three months commensurate with cost of living changes. See CP at 44.
Though the 1993 CBA was set to expire by its terms on July 31, 1996, it was to "continue in full force ... from and for year to year thereafter, unless either party shall ... notify the other party in writing of any desire to make changes in or to terminate this Agreement." CP at 47 (emphasis added). Thus, until the new CBA was executed and took effect, the 1993 CBA between Todd and its employees governed the relationship, rights, and  most importantly  wages.
Negotiations for a replacement CBA commenced in February 1996 but did not finalize until the arbitrator's order resolving the impasse between Todd and PSTMC, resulting in the execution of the 1997 CBA which by its own terms did not take effect until late November 1997.[14] Thus the operative CBA prior to that effective date was the 1993 CBA. To sustain the majority's position, therefore, one must conclude the one-time payment modified the 1993 CBA and the hourly rates it established.
The basis for this alleged modification of the wage rates as enumerated in the 1993 CBA provides as follows:

Wage and Fringe Increase
Effective 8-1-98 $.61/hour
Wage/Fringe

This increase will be applied to all Schedule "A" rates listed above except Firewatch.

Retroactive payments of $.60 for each non-Washington State Ferry Project attendance hour from August 1, 1996 until the execution date of the contract (less applicable employee deductions) shall be made to all non-Washington State Ferry Project employees that were actively employed on the execution date of the contract or had seniority rights as of the execution date of the contract.

CP at 232 (emphasis added). The only express language alluding to a wage "increase" appears in the header and the first paragraph referencing the "Schedule `A'" rates. Id. This undoubtedly references the wage schedule immediately preceding the clause at issue, which lists all of the different positions  and the respective wage thereto  an employee could hold while working for Todd.
The ultimate question becomes whether the above quoted provision in the 1997 CBA altered the previously established wages specified in the 1993 CBA. In other words, did the retroactive payment clause cited above increase the wages established under the 1993 CBA by $.60 per hour? For this payment to modify the previous CBA it necessarily would have to apply across the board, meaning every employee whose wages were governed by the 1993 CBA and who *123 worked overtime hours between August 1, 1996 and execution date of the 1997 CBA would be entitled to overtime compensation, regardless of whether those employees were covered by the 1997 CBA. Yet the record suggests the contrary. There is no indication the 1993 CBA applied selectively to one group of employees (those persons still employed when the new CBA was executed), but not others (those persons covered by the 1993 CBA but no longer employed on the execution date the replacement CBA). Counsel for Hisle readily conceded this at oral argument, admitting no employee would be entitled to such retroactive payment  even if that employee worked overtime hours after August 1, 1996  unless the employee was still employed at the time the new CBA was executed. The express language of the retroactive payment clause affirms this, as the only employees entitled to such payment had to be "actively employed on the execution date of the contract or had seniority rights as of the execution date of the contract." CP at 232 (emphasis added).
Nevertheless the majority holds this $.60 per hour one-time payment retroactively altered the wages established under the 1993 CBA, despite that agreement's protection of employees until the new CBA was executed. Thus under the majority's holding an employee is denied a raise specified in an allegedly modified CBA despite that agreement's protection of his employment and governance of his "regular rate." RCW 49.46.130(1). While both he and his colleagues perform the same services during the same hours for the same employer, only his colleagues are enjoying the fruits of an additional $.60 per hour. This result is unacceptable.
The majority's conclusion is also entirely inconsistent with the facts of this case. The bargaining representatives from both sides of this CBA testified the payment was intended to induce the employees to ratify the proposed CBA, not retroactively increase the employees' wages. Michael Marsh, Todd's secretary and general counsel, testified by declaration that:
In addition, as an inducement to convince the employees to ratify the tentative agreement, Todd had agreed to pay a lump sum to eligible employees, calculated by multiplying $.60 by each employee's non-Washington State Ferry Project "attendance hours" (meaning the hours that the employee was at Todd performing work on something other than one of the Washington State ferries) between August 1, 1996 until the contract was executed.
CP at 15 (emphasis added). The testimony of Robert Scott, representative for PSTMC, corroborated Marsh's account:
Q. This lump sum payment that was paid upon ratification of the  excuse me, not upon ratification but upon the signing of the 1997 contract, did you feel that that was  when that amount was being negotiated that that was necessary to induce the bargaining unit members to vote to ratify the contract?

A. Yes.

Q. Was that a critical part of your thinking?
A. Yes. Like I said, the holidays were coming and people  yeah.
CP at 156 (emphasis added). According to Mr. Scott, the payment was made not only to induce ratification, but it was a term "necessary" to effect ratification. Id. Both representatives expressly rejected the notion the payment was intended to retroactively increase the employees' wages. See CP at 15-16, 153. Nowhere in the record is any indication to the contrary.
Because the wage rates provided in the 1993 CBA did not increase by $.60 per hour for every employee protected by that agreement, it in no way altered those employees'"regular rate at which [they were] employed." RCW 49.46.130(1). As a matter of law then, the employees were rightfully paid every cent of overtime compensation owed pursuant to the MWA.

CONCLUSION
By holding a ratification inducement retroactively altered the "regular rate at which [the employee] is employed" as a matter of law merely because its method of calculation is tied to hours worked, the majority hinders both employers and unions from reaching creative solutions to resolving labor disputes *124 and potential work stoppages. The majority is correct this court has recognized "Washington's long and proud history of being a pioneer in the protection of employee rights." Drinkwitz, 140 Wash.2d at 300, 996 P.2d 582; see also majority at 112. Being a pioneer, however, does not divest our duty to interpret the law in a principled manner. The MWA applies to all hourly employees, but it does not by its own terms apply to every form of payment offered by an employer to an employee. This lump sum payment did not apply universally to every person employed during the relevant time period, which precludes the payment's effect of altering a previously established wage. Moreover proper resolution of this case necessitates an examination of one CBA's effect on the other, thereby compelling federal preemption.
While employees have rights undeniably protected by this state's labor laws, employers also have commensurate rights. One of these rights is the freedom to contract with employees and their unions at arm's length to reach amicable agreements governing the employment relationship. If an added bonus is all that is needed to cajole a group of workers to continue employment under a new CBA rather than walk out and picket, I do not believe the MWA stands as an added hurdle to that agreement merely because the method of calculation factors in the number of hours the employee previously worked.
I dissent.
JOHNSON, BRIDGE and OWENS, JJ., concur.
NOTES
[1] Negotiations initially occurred on a coordinated basis with Pacific Coast Metal Trades Council, another union representing the Todd employees and two other facilities. Todd and Pacific Coast proposed the first agreement rejected by the Todd employees, while Todd and PSMTC proposed the latter two agreements rejected by the Todd employees.
[2] The parties and the Court of Appeals incorrectly cite one of the proposed CBAs as if it were the agreement ordered by the arbitrator. They cite:

 WAGE AND FRINGE INCREASE
 Effective upon Ratification $.60/hour Wage/Fringe
 Effective 8-1-98 $.61/hour Wage/Fringe
 Effective 7-31-99 Collective Bargaining Agreement terminates

Retroactive payments of $.60 for each non-Washington State Ferry Project attendance hour from August 1, 1996 until the execution date of the contract (less applicable employee deductions) shall be made to all non-Washington State Ferry Project employees that were actively employed on the execution date of the contract or had seniority rights as of the execution date of the contract.
Clerk's Papers (CP) at 64; Hisle v. Todd. Pac. Shipyards Corp., 113 Wash.App. 401, 421, 54 P.3d 687 (2002), review granted 149 Wash.2d 1017, 72 P.3d 761 (2003). The pertinent language in the CBA ordered by the arbitrator is properly quoted in the main text.
[3] "Attendance hour" is undisputedly defined as actual hours worked in the shipyard on something other than one of the Washington State ferries. CP at 160.
[4] Todd supported its characterization of the payment with a declaration from Todd's secretary and general counsel, Michael Marsh, as well as the deposition of PSMTC business representative Robert Scott. Michael Marsh declared:

This payment was not a retroactive pay raise; nor was it compensation for services previously provided by the employees. The lump sum payment was over and above any wage rates or increases to the wage rates previously agreed to by the parties and exceeded any payments otherwise required by law. Although the tentative agreement refers to "Retroactive payments....", this language meant only that the lump sum payment was to be calculated in part by looking at the hours worked during a prior period of time.
CP at 15. Mr. Scott testified that Todd and PSMTC agreed that overtime would not be paid on the retroactive payment. CP at 153-56.
[5] Whether the class will be certified remains to be determined because Hisle did not raise the issue to this court.
[6] The FLSA is persuasive authority because the MWA is based on the FLSA. Drinkwitz, 140 Wash.2d at 298, 996 P.2d 582. Like the MWA, the FLSA requires overtime pay of one and one-half times the regular rate for every hour worked beyond 40. 29 U.S.C. § 207(a)(1).
[7] In Commodore, we explicitly rejected the preemption model that the dissent urges us to apply  a model asserting that "nonnegotiable' or [state] rights should only be preempted when their resolution depends upon the interpretation of any express or implied term of the CBA." Commodore, 120 Wash.2d at 129, 839 P.2d 314. We had the following to say about the Lingle footnote that the dissent quotes:

This rather cryptic footnote, which is dicta, gives no examples to illustrate the foregoing "conceivable" situations. We are at a loss to explain or apply such rules, other than on a fact-specific, case-by-case basis. Indeed, we are unable to fashion a practicable, systematic method of evaluating state law claims under [this] model.
Id. at 131, 839 P.2d 314.
[8] Huntley v. Frito-Lay, Inc., 96 Wash.App. 398, 402, 979 P.2d 488 (1999); Schneider, 95 Wash.App. at 401-02, 976 P.2d 134; Ervin, 84 Wash.App. at 891, 930 P.2d 947; United Food Commercial Workers Union Local 1001 v. Mut. Benefit Life Ins. Co., 84 Wash.App. 47, 50, 925 P.2d 212 (1996). Although many of these cases held that MWA claims were not preempted by section 301 of the LMRA because the MWA is an independent nonnegotiable state right, we note that requiring a nonnegotiable state right to also be independent is redundant. "The [preemption] model [adopted by this court] classifies nonnegotiable state law rights  those that cannot be waived in contract  as independent of CBA's by definition: They cannot be altered by CBA negotiations." Commodore, 120 Wash.2d at 131, 839 P.2d 314.
[9] Todd raised the defense of res judicata (claim preclusion), not the defense of collateral estoppel (issue preclusion). We must be vigilant in preserving the distinction between these two defenses. "The doctrine of collateral estoppel differs from res judicata in that, instead of preventing a second assertion of the same claim or cause of action, it prevents a second litigation of issues between the parties, even though a different claim or cause of action is asserted." Seattle-First Nat'l Bank v. Kawachi, 91 Wash.2d 223, 225-26, 588 P.2d 725 (1978).
[10] Although the Court of Appeals did not expressly address whether the Adams dismissal was a final adjudication on the merits, Hisle, 113 Wash.App. at 410-14, 54 P.3d 687, this threshold res judicata requirement is satisfied because Adams was dismissed with prejudice. Maib v. Md. Cas. Co., 17 Wash.2d 47, 52, 135 P.2d 71 (1943) (a dismissal with prejudice constitutes a final judgment on the merits).
[11] Former RAP 18.1(a) (2002) stated, "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court." Former RAP 18.1(b) (2002), stated that "[t]he party must devote a section of the brief to the request for the fees or expenses."
[12] RAP 18.1(a) was amended on September 1, 2003, to add "before either the Court of Appeals or Supreme Court," after "expenses on review." RAP 18.1(b) states, "[t]he party must devote a section of its opening brief to the request for the fees or expenses. Requests made at the Court of Appeals will be considered as continuing requests at the Supreme Court." (Emphasis added.).
[1] I will refer to the plaintiffs collectively throughout this opinion as "Hisle."
[2] E.g., RCW 49.46.010(5), .130(2)(a) (exempting, inter alia, professionals, persons employed in casual labor in the home, administrators, volunteers for educational institutions or charities); . 130(2)(c) (exempting individuals employed as seamen). This is by no means an exhaustive list. See RCW 49.46.130(2).
[3] E.g., RCW 49.46.130(2)(h) (exempting certain industries in which federal law provides overtime compensation based on a workweek other than 40 hours).
[4] Tandy Corporation operated in Washington under the more familiar name Radio Shack. Inniss, 141 Wash.2d at 519, 7 P.3d 807.
[5] Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060 (codified as amended at 29 U.S.C. § 201-19).
[6] 29 U.S.C. § 207(e).
[7] 29 U.S.C. § 207(e)(2) exempts the following from inclusion within the federal definition of "regular rate":

payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment.
[8] RCW 49.48.010 requires an employer to pay the employee "wages due him on account of his employment ... at the end of the established pay period" whenever the worker's employment is terminated, either voluntarily or involuntarily.
[9] Labor Management Relations Act of 1947, ch. 120, 61 Stat. 136, 156, § 301 (1947) (codified at 29 U.S.C. § 185).
[10] The 1997 CBA contained an arbitration clause. See CP at 227.
[11] See RCW 49.60.180(3), .220.
[12] Commodore also held the employee's state law claims for defamation, outrage, and tortious interference with a business relationship or expectancy claim were not preempted because each cause of action exists independently of the CBA. See Commodore, 120 Wash.2d at 134, 839 P.2d 314 ("a cause of action for defamation exists independently of any CBA"); id. at 137, 839 P.2d 314 ("outrage is not preempted because it is not based on the CBA, but in a source of legal duty  Washington tort law  independent of that contract"); id. at 138, 839 P.2d 314 ("Washington, too, does not require the existence of an enforceable contract or the breach of one to support an action for tortious interference with a business relationship.").
[13] I recognize the quoted portion of Lingle is dictum, notwithstanding my previous criticism of the majority's reliance on Minizza's dictum. See supra at 112-13. The difference is that Lingle's discussion of Section 301 preemption is entirely relevant to this case whereas Minizza's dictum addressing 29 U.S.C. § 207(e)(2)'s exemption to the federally defined "regular rate" is not relevant. See supra at 112-13.
[14] Section 31.1 of the 1997 CBA provided, "This agreement shall become effective on November 24, 1997...." CP at 231.